

**FILED**
Nov 9, 2006
NOV = 9 2006

UNITED STATES DISTRICT COURT **MICHAEL W. DOBBINS**
NORTHERN DISTRICT OF ILLINOIS **CLERK, U.S. DISTRICT COURT**
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* BERNARD LISITZA, STATE OF ILLINOIS *ex rel.* BERNARD LISITZA, STATE OF CALIFORNIA *ex rel.* BERNARD LISITZA, STATE OF DELAWARE *ex rel.* BERNARD LISITZA, DISTRICT OF COLUMBIA *ex rel.* BERNARD LISITZA, STATE OF FLORIDA *ex rel.* BERNARD LISITZA, STATE OF HAWAII *ex rel.* BERNARD LISITZA, STATE OF INDIANA *ex rel.* BERNARD LISITZA, STATE OF LOUISIANA *ex rel.* BERNARD LISITZA, COMMONWEALTH OF MASSACHUSETTS *ex rel.* BERNARD LISITZA, STATE OF MICHIGAN *ex rel.* BERNARD LISITZA, STATE OF MONTANA *ex rel.* BERNARD LISITZA, STATE OF NEVADA *ex rel.* BERNARD LISITZA, STATE OF NEW HAMPSHIRE *ex rel.* BERNARD LISITZA, STATE OF NEW MEXICO *ex rel.* BERNARD LISITZA, STATE OF TENNESSEE *ex rel.* BERNARD LISITZA, STATE OF TEXAS *ex rel.* BERNARD LISITZA, COMMONWEALTH OF VIRGINIA *ex rel.* BERNARD LISITZA, and BERNARD LISITZA, individually, <br><br> Plaintiffs, <br><br> v. <br><br> PAR PHARMACEUTICAL COMPANIES, INC., DR. REDDY'S LABORATORIES, LTD., AND ALPHAPHARM PTY, LTD. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 06CV6131 <br><br> JUDGE HOLDERMAN <br><br> MAG.JUDGE KEYS <br><br> CHIEF JUDGE HOLDERMAN <br><br> **FILED UNDER SEAL** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

**Table of Contents**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.      JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.      PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.      RELATOR LISITZA'S DISCOVERY OF THE FRAUD . . . . . . . . . . . . . . . . . . . . . 9

V.      DEFENDANTS KNOWINGLY CAUSED PRESENTATION OF FALSE CLAIMS . 10

       A.      Par's Government Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.      Defendants' Scheme to Defraud the Government . . . . . . . . . . . . . . . . . . . . . . 11

            i. Different Dosage Forms and Strengths are Different Drugs with Different
              Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            ii. Defendants Marketed Illegal Drug Switching to Evade Government Price
              Limits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            a. Illegal Switching to Defendants' Ranitidine Capsules . . . . . . . . . . . . . . . . . 15

            b. Illegal Switching to Defendants' Fluoxetine Tablets . . . . . . . . . . . . . . . . . . 17

            c. Illegal Switching to Defendants' 7.5 mg Buspirone Tablets . . . . . . . . . . . . 21

       C.      Defendants Caused False and Fraudulent Claims and Statements
            for Illegally Switched Drugs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.      DAMAGES TO THE GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VII.      DAMAGES UNDER THE ILLINOIS INSURANCE CLAIMS FRAUD AND
       PREVENTION ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

COUNT I
False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

COUNT II
Illinois Whistleblower Reward and Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . 33

COUNT III
  Illinois Insurance Claims Fraud Prevention Act ............................... 37

COUNT IV
  California False Claims Act ................................................ 38

COUNT V
  Delaware False Claims and Reporting Act .................................... 42

COUNT VI
  District of Columbia False Claims Act ...................................... 46

COUNT VII
  Florida False Claims Act .................................................. 50

COUNT VIII
  Hawaii False Claims Act .................................................. 54

COUNT IX
  Indiana False Claims Act .................................................. 57

COUNT X
  Louisiana Medical Assistance Programs Integrity Law .......................... 61

COUNT XI
  Massachusetts False Claims Act ........................................... 65

COUNT XII
  Michigan Medicaid False Claims Act ....................................... 69

COUNT XIII
  Montana False Claims Act ................................................ 73

COUNT XIV
  Nevada False Claims Act ................................................. 76

COUNT XV
  New Hampshire Medicaid Fraud and False Claims Act ......................... 80

COUNT XVI
  New Mexico Medicaid False Claims Act ..................................... 84

COUNT XVII
     Tennessee Medicaid False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

COUNT XVIII
     Texas Medicaid Fraud Prevention Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

COUNT XIX
     Virginia Fraud Against Taxpayers Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

The United States of America *ex rel.* Bernard Lisitza, the States of Illinois, California,

Delaware, Florida, Hawaii, Indiana, Louisiana, Michigan, Montana, Nevada, New Hampshire, New

Mexico, Tennessee and Texas, the Commonwealths of Massachusetts and Virginia, and the District

of Columbia *ex rel.* Bernard Lisitza, and Bernard Lisitza, individually (collectively "plaintiffs"), state

as follows for their Complaint against Par Pharmaceutical Companies, Inc., Dr. Reddy's

Laboratories, Ltd. and Alphapharm Pty, Ltd. (collectively "defendants"):

## I.     INTRODUCTION

1.     This is an action by the United States of America and the States of Illinois, California,

Delaware, Florida, Hawaii, Indiana, Louisiana, Michigan, Montana, Nevada, New Hampshire, New

Mexico, Tennessee and Texas, the Commonwealths of Massachusetts and Virginia, and the District

of Columbia through the Relator Bernard Lisitza ("Relator Lisitza" or "Lisitza"), to recover treble

damages and civil penalties arising from false statements and claims made, used or caused to be

made by defendants Par Pharmaceutical Companies, Inc. ("Par"), Dr. Reddy's Laboratories, Ltd.

("Reddy"), and Alphapharm Pty, Ltd. ("Alphapharm") to the United States and the individual states

(collectively the "government"), in violation of the federal False Claims Act, 31 U.S.C. §§3729-32,

and analogous state statutes.[1] Additionally, Relator Lisitza brings this action in the name of the State

---

[1]Specific citations for relevant state *qui tam* statutes are as follows: The Illinois
Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*; the California False Claims
Act, Cal. Gov. Code §12651(a); the Delaware False Claims and Reporting Act, Del. Code Tit.
VI. §1201; the District of Columbia False Claims Act, D.C. Code §2-308.13 *et seq.*; the Florida
False Claims Act, Fl. Stat. §§68.081-68.09; the Hawaii False Claims Act, Haw. Rev. Stat. §661-
21 *et seq.*; the Indiana False Claims Act, Ind. Code §5-11-5.5 *et seq.*; the Louisiana Medical
Assistance Programs Integrity Law, La. Rev. Stat. §46:439.1; the Massachusetts False Claims
Act, Mass. Gen. Laws c.12 §5(A) *et seq.*; the Michigan Medicaid False Claims Act, Mich.
Comp. Laws §400.601 *et seq.*; the Montana False Claims Act, Mont. Code §17-8-401 *et seq.*; the
Nevada False Claims Act, Nev. Rev. Stat. §357.010 *et seq.*; the New Hampshire Medicaid Fraud
and False Claims Act, N.H. Rev. Stat. §167:61 *et seq.*;  the New Mexico Medicaid False Claims

of Illinois to recover treble damages and civil penalties arising from false statements and claims made or caused to be made by defendants to private payor insurance companies under the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq*.

2.      Defendant Par develops, markets and sells generic drugs. Par collaborates with foreign company defendants Reddy and Alphapharm in the production and distribution of drugs to pharmacies in the United States. Many of these drugs are ultimately paid for by the government through Medicaid and other social service programs.

3.      Drugs come in various dosage strengths and forms, such as tablets, capsules, syrups and suspensions. Under federal and state law, each dosage form or strength is a different drug, even though it might have the same active ingredient. Different dosage forms have different inactive ingredients, and have additional distinctions concerning potential effectiveness and safety that are significant to physicians, patients and the United States Food and Drug Administration ("FDA"). Different dosage strengths have different potencies. Different dosage forms and strengths – as different drugs – can also have very different prices.

4.      In order to increase sales, defendants marketed their higher-priced drugs to pharmacies by falsely portraying their drugs as equivalent to other drugs for which the government had established lower maximum prices. By illegally switching defendants' drugs for the drugs that were actually prescribed, pharmacies could and did obtain higher reimbursements from government Medicaid programs and evade the government's price limits. Through this switching scheme,

---

Act, N.M. Stat. §27-14-1 *et seq*.; the Tennessee Medicaid False Claims Act, Tenn. Code §71-5-181 *et seq*.; the Texas Medicaid Fraud Prevention Act, Tx. Hum. Res. Code §36.101 *et seq*.; and the Virginia Fraud Against Taxpayers Act, Va. Code §8.01-216.1 *et seq*.

2

defendants knowingly caused the unlawful submission of false and fraudulent claims and statements to the government.

5.     From at least May 2001, defendants conspired with many pharmacies to effectuate this switching scheme, including Walgreens, the nationwide drugstore chain, and Omnicare, the nationwide pharmacy for nursing homes. The intended result of defendants' actions and conspiracy with Walgreens, Omnicare and others was that the government paid substantially more for drugs that had not been prescribed – making profits for Par and its collaborators at taxpayer expense.

6.     Par initiated this scheme by obtaining the U.S. marketing rights from companies such as defendants Reddy and Alphapharm for foreign-made drugs that were in different dosage forms and strengths of frequently prescribed prescription drugs. Then, Par marketed and supplied the different dosage forms or strengths to effectuate illegal drug switching. The foreign drug manufacturers, defendants Reddy and Alphapharm, knowingly participated in Par's activities.

7.     Defendants created a market for drugs in a dosage form or strength that's principal use was unlawful switching. Brand name drugs came in established dosage forms, and were known to both doctors and patients in that form. When generics became available, prescriptions called for the generic drug in the same form. If the brand name drug is a tablet, doctors prescribe generic tablets. If the brand name drug is a capsule, doctors prescribe generic capsules. There is little or no demand for another form. Defendants made the drug in a different form or strength specifically for the purpose of marketing the higher reimbursements that could be achieved by illegal switching.

3

8.      One example of defendants' scheme to switch dosage forms involved ranitidine, the generic form of the popular antacid Zantac.  Ranitidine, in the high dosage strength that required prescriptions, was one of the most frequently prescribed medications in the United States.

9.      Zantac typically came in tablets.  When it was prescribed, state generic substitution laws required pharmacists to fill Zantac tablet prescriptions with generic ranitidine tablets, which cost much less.  Due to the popularity of the drug, federal and state governments set maximum prices that they would pay for generic ranitidine tablets under the Medicaid program, which provides prescription drugs for low income individuals and families.

10.      While doctors almost always prescribed Zantac and ranitidine tablets, Par obtained the marketing rights for ranitidine *capsules* from Reddy, an Indian manufacturer of generic drugs.  Ranitidine capsules were prescribed very infrequently (less that 5% of the time) and so were not subject to federal and state price limits.  Consequently, they cost two to four times as much as the commonly prescribed tablets.

11.      To take advantage of the price disparity, Par conspired with Walgreens to fill all Zantac and ranitidine prescriptions with ranitidine capsules.  Thus, when a doctor prescribed raniditine tablets, the patient received ranitidine capsules.  This switching was illegal.  Under federal and state law, ranitidine tablets and ranitidine capsules are different drugs.  One cannot be lawfully substituted for the other.

12.      When Walgreens and other pharmacies obtained Medicaid reimbursements for ranitidine capsules, they falsely represented that defendants' capsules were the drugs prescribed.  They also falsely represented their compliance with state and federal laws, and concealed their

4

evasion of state and federal price limits. Par and the other defendants' marketing, supply, and other activities caused, made and used these false and fraudulent claims and statements. The defendants also conspired with Walgreens, Omnicare, and others to defraud the government by getting false or fraudulent claims allowed or paid. These actions by the defendants violated federal and state false claims acts, in a scheme that has continued through at least this year.

## II. JURISDICTION AND VENUE

13.     This is a civil action arising under the laws of the United States to redress violations of 31 U.S.C. §§3729-3730. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction; and, (iii) pursuant to 28 U.S.C. §1345, because the United States is a plaintiff.

14.     This court has jurisdiction over plaintiffs' state law claims under 31 U.S.C. §3732(b). This court also has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. §1367.

15.     This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit, or investigation, or in a government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

16.     To the extent that there has been a public disclosure unknown to Lisitza, Lisitza is an original source under 31 U.S.C. §3730(e)(4) and all relevant state statutes.[2]  He has direct and

---

[2]Lisitza is an "original source" under all "original source" requirements found in plaintiff state *qui tam* statutes: Illinois (740 ILCS 175/4(e)(4)); California (Cal. Gov. Code §12652 (a)(d)(3)(B)); Delaware (Del. Code Tit. VI. §1206(c)); District of Columbia (D.C. Code §2-

5

independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the government before filing an action under this section, which is based on the information.

17.     Plaintiff Lisitza is concurrently providing to the Attorney General of the United States, to the United States Attorney for the Northern District of Illinois, and to the Attorneys General of plaintiff states a statement summarizing known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. §3730(b)(2) and relevant state statutes.[3] This disclosure statement is supported by material evidence.

18.     This court has personal jurisdiction over defendants under 31 U.S.C. §3732(a) because defendants can be found, reside, or transact business in this District, or an act proscribed by 31 U.S.C. §3729 occurred in this District. Defendants caused the presentment of false or fraudulent claims directly or indirectly to the United States, the State of Illinois and other states through

---

308.15(c) (2)(A)); Florida (Fl. Stat. §68.087(3)); Hawaii (Haw. Rev. Stat. §661-28); Indiana (Ind. Code §5-11-5.5-7(f)); Louisiana (La. Rev. Stat. §46:439.1(B)(1) and (2)); Massachusetts (Mass. Gen. Laws c.12 §§5(A), 5(G)(3)); Michigan (Mich. Comp. Laws §400.610a(13)); Montana (Mont. Code §17-8-403); Nevada (Nev. Rev. Stat. §357.100); New Hampshire (N.H. Rev. Stat. §167:61-e(3)); New Mexico (N.M. Stat. §27-14-10); Tennessee (Tenn. Code §71-5-183(d)(2)(A) and (B)); Texas (Tx. Hum. Res. Code §36.113); and Virginia (Va. Code §8.01-216.8).

[3] State *qui tam* "disclosure statement" requirements are found at: Illinois (740 ILCS 175/4(b)(2)); California (Cal. Gov. Code §12652(c)(3)), Delaware (Del. Stat. Tit. VI. §1203(b)(2)); District of Columbia (D.C. Code §2-308.15(b)(3)); Florida (Fl. Stat. §68.083(3)); Hawaii (Haw. Rev. Stat. §661-25(b)); Indiana (Ind. Code §5-11-5.5-4(c)); Louisiana (La. Rev. Stat. §46:439.2(A)(2)(a) and (b)); Massachusetts (Mass. Gen. Laws c.12 §5(c)(3)); Michigan (Mich. Comp. Laws §400.610a(2)); Montana (Mont. Code §17-8-406); Nevada (Nev. Rev. Stat. §357.080(5)); New Hampshire (N.H. Rev. Stat. §167:61-c(2)(c)); New Mexico (N.M. Stat. §27-14-7(c)); Tennessee (Tenn. Code. §75-1-183(2)); Texas (Tx. Hum. Res. Code §36.102(a)); and Virginia (Va. Code §8.01-216.5(B)).

communications, agreements and/or transactions with Walgreens Company at Walgreens' corporate

headquarters in Deerfield, Illinois, and through Walgreens' multiple pharmacies in this District.

Defendants have also made, used, or caused to be made or used, false or fraudulent records in this

District to get false or fraudulent claims paid or approved by the government. Venue is proper in

this District under 31 U.S.C. §3732(a) and 28 U.S.C. §1391.

## III.    PARTIES

19.    Plaintiff and Relator Bernard Lisitza is a citizen and resident of the State of Illinois.

He brings this action on his own behalf and on behalf of the government pursuant to 31 U.S.C.

§3730(b)(1) and the analogous state *qui tam* statutes. Plaintiff Lisitza also brings this action in the

name of the state of Illinois on behalf of private insurance payors harmed by Defendants' conduct

in causing the presentation of false claims for illegally switched prescription drugs, pursuant to the

*qui tam* provision of the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/15.

20.    Defendant Par Pharmaceutical Companies, Inc. is a Delaware corporation with its

principal place of business in New Jersey. Par has annual sales of approximately $425 million, for

over 110 generic drugs. Defendant executive officers include: Mark Auerbach, Executive Chairman

of the Board; Scott Tarriff, President and Chief Executive Officer; Michael Graves, President,

Generic Products Division; Kenneth I. Sawyer, Chairman of the Board (retired July 2003); Dennis

J. O'Connor, Vice President and Chief Financial Officer (through March 2003); and Gerald A.

Martino, Chief Financial Officer (from March 2003).

7

21.     Defendant Dr. Reddy's Laboratories, Ltd. is an Indian company, with shares listed for trading on the New York Stock Exchange. Reddy has a registered agent in Bridgewater, New Jersey. Reddy has annual sales of approximately $438 million for its generic drugs.

22.     Reddy knowingly participated with Par in the unlawful conduct detailed in this complaint. Since 1996, Par and Reddy have jointly developed and marketed products in the United States. In April 2001, Par and Reddy entered into a broad-based co-marketing and development agreement that covered fluoxetine tablets and several other drugs. A similar prior agreement covered ranitidine capsules. Reddy described these agreements as including "full participation in marketing decisions and negotiations with key clients, co-marketing, [and] favorable profit-sharing."

23.     Reddy is well aware of the United States legal requirements that were violated by the illegal switching detailed herein. In each of its annual reports since at least 2002, Reddy has recognized that "[g]enerics are generic finished dosages with therapeutic equivalence to branded formulations." Under federal and state laws, "therapeutic equivalence" requires that the dosage form and strength be identical. Through the conduct described herein, Reddy and the other defendants marketed different dosage forms and strengths as if they were therapeutically equivalent, while knowing they were not.

24.     Defendant Alphapharm is an Australian manufacturer of generic drugs (and a subsidiary of Merck KGaA). Par and Alphapharm shared profits from selling fluoxetine tablets and other generic drugs, under a distribution agreement dated November 20, 2000 between Par and Genpharm Inc. (an affiliate of Alphapharm and another subsidiary of Merck KgaA). Genpharm granted Par exclusive distribution rights within the United States and certain other United States

8

territories with respect to these generic pharmaceutical products. Alphapharm participated in marketing in similar fashion to Reddy. Alphapharm was also well aware of U.S. legal requirements.

## IV.    RELATOR LISITZA'S DISCOVERY OF THE FRAUD

25.     Plaintiff and Relator Lisitza is a licensed Illinois pharmacist practicing since 1961. Relator worked at Omnicare for nine years, and was fired after internally reporting his concerns about the switching scheme. After his termination, Lisitza worked, through a placement agency, for a variety of pharmacies across Illinois on a temporary basis. Typically, Lisitza is placed in a pharmacy somewhere in Illinois to substitute for vacationing pharmacists or where a pharmacy is temporarily short-staffed.

26.     While working in these temporary positions, Lisitza discovered that the same switching fraud was being employed at a few nationwide pharmacies, such as Walgreens. Other pharmacies refused to engage in the practice, and viewed it as improper.

27.     Lisitza brought the switching scheme to the government's attention in 2001. He was the first person to bring this fraudulent scheme to the government's attention. At that time and subsequently, he informed the government of his belief that the manufacturer of ranitidine capsules and similar products was actively involved and promoting the switching scheme.

28.     Since his initial disclosures, Lisitza has worked actively with the government to investigate and prosecute the fraud – devoting both his expertise and countless hours of his time to these efforts.

9

## V.   DEFENDANTS KNOWINGLY CAUSED PRESENTATION OF FALSE CLAIMS

### A.   Par's Government Business

29.     Par is primarily in the business of marketing and selling generic forms of prescription drugs. Generic drugs are marketed after the patent expiration of a brand name drug, and are much less expensive than the brand name. The generic drug industry is highly regulated. Par pays close attention to the regulatory scheme, particularly to those regulations that affect its pricing and profits.

30.     As part of its core business, Par markets generic drugs made by foreign manufacturers for consumers in the United States. Par regularly enters into marketing and distribution agreements with foreign manufacturers, such as defendants Reddy and Alphapharm, under which Par receives a substantial share of the profits for selling the drugs made by the foreign manufacturers.

31.     Defendants' pharmaceuticals are used by thousands of low-income individuals and families, disabled persons, elderly persons, and military personnel and their families whose benefits are paid by the government. Defendants know that their products are paid for under the federal and state Medicaid programs, as well as under other government programs.  To obtain Medicaid payments for its products, Par, Reddy and Alphapharm entered into rebate agreements with the federal government, the State of Illinois and with other states that require defendants to rebate a percentage of its Medicaid sales back to federal and state government.

32.     Defendants receive millions of dollars annually as a result of reimbursements from the government for prescriptions provided to persons receiving benefits from Medicaid, Tri-Care/CHAMPUS, and state-operated prescription reimbursement programs (*e.g.*, Illinois

10

SeniorCareRx and Circuit Breaker), as well as other government third-payor health insurance programs.

## B.     Defendants' Scheme to Defraud the Government

33.     In order to sell more of their drugs, defendants caused the unlawful filling of prescriptions with defendants' products rather than the drug that the doctor had prescribed. Par also agreed to supply Walgreens Company, Omnicare, and others with defendants' products to effectuate a scheme of switching prescription drugs. Walgreens is one of Par's biggest customers.

34.     The intended result of defendants' actions and conspiracy with Walgreens, Omnicare, and others was that the government paid substantially more for drugs that had not been prescribed, as a result of false and fraudulent claims by these drug providers.

35.     Par initiated this scheme by obtaining the U.S. marketing rights for foreign-made drugs that were in different dosage forms or strengths of frequently prescribed prescription drugs. Then, defendants marketed and supplied the different dosage forms or strengths to effectuate illegal drug switching. Under their agreements with Par, Reddy and Alphapharm knowingly participated in Par's activities.

36.     Par's corporate officers Auerbach, Tarriff, Graves, Sawyer, O'Connor, and Martino controlled Par's activities during the time period when the switching schemes were developed and implemented. They were in change of financial planning and oversight, SEC filings, merchandising and marketing, and other key decisions and practices that furthered the fraud and caused false statements to be made and presented to the Government. For example, in Par's 2001 10-K filing with the SEC the following corporate statement appeared: "[a] generic competitor of the Company will

11

receive 180 days marketing exclusivity for fluoxetine capsules. The Company believes that its fluoxetine *tablets*, upon receiving FDA approval and the anticipated 180 days of marketing exclusivity as noted above, should be able to compete for a share of the fluoxetine *capsule* market." That statement was signed by Auerbach, Tarriff, Sawyer, and O'Connor.

### i. Different Dosage Forms and Strengths are Different Drugs with Different Prices

37.     Drugs come in various dosage strengths and forms, such as tablets, capsules, syrups and suspensions. Under federal and state law, each dosage form or strength is a different drug, even though it might have the same active ingredient. Different dosage strengths have different potency. Different dosage forms have different inactive ingredients and other distinctions that are significant to physicians, patients and the United States Food and Drug Administration ("FDA").

38.     The United States Pharmacopeia ("USP") is a primary basis for defining and listing different drugs under federal and state law. The USP establishes that different dosage forms with the same active ingredient are different drugs under federal and state law.

39.     The FDA requires each dosage form to gain approval as a new drug, regardless of whether the drug's active ingredient was approved in a different dosage form. The FDA also determines whether drugs are "therapeutically equivalent" and "pharmaceutically equivalent." Drugs cannot be substituted for each other unless they are both therapeutically and pharmaceutically equivalent. The FDA has established that drugs with different dosage forms or strengths are not therapeutically or pharmaceutically equivalent, even if they have the same active ingredient.

40.     State laws broadly prohibit pharmacies from substituting one dosage form or strength for another. In a narrow exception, state laws allow a generic drug to be substituted for a

12

therapeutically equivalent brand name drug – but only if the generic drug is less expensive and has the same dosage form and strength.

41.     Government programs that pay for prescription drugs, such as Medicaid, also pay different amounts for different dosage forms and strengths.  The disparity in these reimbursements can be striking.  One dosage form can cost many times more than another dosage form, even when the drugs have the same active ingredient.   For example, a capsule can cost the government four times as much as a tablet, even if they have the same active ingredient and dosage strength.

42.     For popular drugs, federal and state governments set maximum prices.  Such drugs are subject to a Federal Upper Limit ("FUL").  FULs are set by the federal Centers for Medicare & Medicaid Service ("CMS") when: (1) at least three versions of the drug are rated therapeutically equivalent by the FDA, and (2) the drug has at least three suppliers (listed in national compendia). 42 U.S.C.  § 1396r-8.  FULs apply only to specified dosage forms and strengths.

43.     States typically follow federal upper price limits.  For example, per Illinois Medicaid regulations, the Federal Upper Limit is the maximum price that Illinois will pay pharmacies.  89 Il. Adm. Code.  140.445(b)(1)(B).  In addition to the Federal Upper Limit, states can also limit reimbursements for popular drugs through a state-specific Maximum Allowable Cost ("MAC").

44.     For other prescription drugs, states typically reimburse on the basis of  average wholesale price, or similar measures.  *See e.g.*, 89 Il. Adm. Code 140.445(b)(1)(A) and (D).

45.     Thus, frequently prescribed drugs tend to have lower prices under federal and state maximum prices.  Infrequently prescribed drugs tend to be reimbursed at a higher rate according to the manufacturers' pricing.

13

46.     Pricing disparities among dosage forms and strengths is particularly prevalent with respect to brand name drugs that become subject to generic competition.  Since doctors become familiar and comfortable with brand name drugs in a certain dosage form and strength, prescriptions call for the generic drug in the same form and strength.  If the brand name drug is a tablet commonly prescribed in a certain dosage strength, doctors prescribe generic tablets in that strength.  Likewise, if the brand name is a capsule, doctors prescribe generic capsules.

47.     After the patent on a brand name drug expires, many companies make a generic form of the drug in the same dosage form and strength as the brand name drug.  The generic drug, in the same dosage form and strength, could be legally substituted for the brand name drug.  Many states even require such substitutions of equivalent generic drugs for Medicaid reimbursements.  Through FULs and MACs, the government correspondingly set a maximum price for the generic drug in the same dosage form and strength as the brand name, which could legally be substituted for the brand name product.

48.     Thus, there were large disparities between the generic equivalents for popular brand name drugs, and other dosage forms and strengths with the same active ingredient. These were circumstances where a tablet and a capsule could have the same active ingredient but very different prices to the government.

### ii.  Defendants Marketed Illegal Drug Switching to Evade Government Price Limits

49.     Defendants knew of the price disparities that occurred when a popular brand name drug had price limits for its generic form. With their industry expertise, defendants knew when such disparities were going to occur before they happened.  Defendants sought to take advantage of these

14

disparities by making and marketing generic drugs with the same active ingredient as popular brand name drugs – but in a different dosage form or strength. Par and the other defendants' marketing, supplying, and knowing assistance caused, enabled and aided Walgreens, Omnicare, and other pharmacy providers to make false and fraudulent claims and statements for the higher priced drugs to the government and knowingly caused evasion of federal and state price limitations.

50. Par created a market for drugs in a dosage form or strength that's principal use was unlawful switching. Brand name drugs came in an established dosage forms, and were known to both doctors and patients in that form and strength. Defendants made the drug in a different form or strength specifically for the purpose of marketing the higher reimbursements that could be achieved by illegal switching. For example, buspirone was readily available in 5, 10 and 15 milligrams ("mg") doses. Par alone entered the market with a 7.5 mg dose. The only reason for this dose was that two 7.5 mg could readily be used to switch for the 15 mg dose, as the 15 was subject to maximum prices. There was no other need for the 7.5 mg dose.

### a. Illegal Switching to Defendants' Ranitidine Capsules

51. One example of defendants' conduct involved the popular antacid Zantac. High doses of 150 and 300 mg require a prescription. Zantac typically comes in tablets. Its generic form, the ranitidine tablet, was sold when Zantac's patent expired. As a popular medication, ranitidine tablets were subject to federal and state price limits. In Illinois and many other states, ranitidine tablets were reimbursed at the Federal Upper Limit price of $0.34 per 150 mg tablet.

52. Par obtained the U.S. marketing rights to market and sell ranitidine *capsules*, which were manufactured by Reddy. State and federal governments paid two to four times more for

15

defendants' rarely prescribed ranitidine capsules than for ranitidine tablets, because the capsules were reimbursed on the basis of the manufacturers' average wholesale price and similar measures.

53.     Par and Reddy marketed ranitidine capsules to induce Walgreens, Omnicare and other pharmacies to fill all Zantac and ranitidine prescriptions with ranitidine capsules, which promoted unlawful switching to the capsules. Par made presentations, distributed flyers and used other methods for that purpose. Notably, Par stressed that capsules were easier to swallow when later, in selling fluoxetine tablets, Par stressed that tablets were easier to swallow. To evade federal and state maximum prices, defendants knowingly assisted Walgreens, Omnicare, and other pharmacies in unlawfully filling all prescriptions for Zantac or ranitidine with defendants' more expensive ranitidine capsules. This resulted in the government paying false and fraudulent claims for defendants' more expensive product.

54.     Walgeens and Par created a "Health Resources Partnership." Part of the goal of this partnership was to market ranitidine capsules as if they were equivalent to, and legally interchangeable with ranitidine tablets, when in fact they were not.

55.     In May of 2001 or earlier, consistent with its discussions and agreements with Par, Walgreens set up its pharmaceutical distribution system so that it was virtually impossible to fill a prescription for Zantac or generic ranitidine with ranitidine tablets. Walgreens made ranitidine capsules the only form of generic ranitidine readily available to their retail customers. Upon receiving tablet prescriptions, Walgreens' pharmacy personnel could not process the orders as written, but instead had to fill the prescriptions with defendants' capsules. Thus, even though tablets were prescribed, the prescription was unlawfully filled with defendants' capsules.

16

56.     Walgreens required its pharmaceutical staff to fill all Zantac or ranitidine prescriptions with defendants' capsules regardless of what the physician had prescribed, in violation of state and federal law.   Even refills of Zantac and ranitidine tablets were filled with ranitidine capsules.

57.     Walgreens did not have any system to obtain doctor or patient authorization for the drug switching, or even a system to notify the doctor and patient that the prescribed drug had been switched. Walgreens did not obtain legitimate doctor or patient authorization for the drug switching.

58.     Par also entered into partnerships or agreements to market ranitidine capsules as equivalent to, and legally interchangeable with, ranitidine tablets with other pharmacies including Omnicare.  Omnicare also did not obtain any valid doctor or patient authorization for switches.

59.     Defendants supplied enormous quantities of ranitidine capsules in order to effectuate the switching scheme.   The quantity of government reimbursements for defendants' capsules after the switching scheme was implemented dwarfed the number of capsule reimbursements processed before the scheme was initiated.

60.     In 2004, Walgreens, under government scrutiny, discontinued the practice of switching defendants' ranitidine capsules for the tablets prescribed.   After the practice was discontinued, the Medicaid reimbursements for ranitidine tablets dramatically increased and the reimbursements for defendants' capsules fell to nearly nothing.

### b. Illegal Switching to Defendants' Fluoxetine Tablets

61.     Another example of defendants' unlawful conduct involved the popular antidepressant Prozac.  Prozac is most commonly prescribed in capsules.  Its generic form, the

17

fluoxetine capsule, was sold when Prozac's patent expired on August 1, 2001. Before the patent expired, it was readily apparent to Par and the other defendants that fluoxetine capsules would be subject to federal and state maximum prices.

62.    Thus, Par secured the exclusive rights to market fluoxetine *tablets* in the United States from Alphapharm. Par and Alphapharm shared the profits from selling fluoxetine tablets, under a distribution agreement dated November 20, 2000, between Par and Alphapharm affiliate Genpharm Inc.

63.    Under U.S. drug laws, the first party to obtain approval of a generic drug gets a 180-day exclusivity period, when only that company is allowed to sell that generic drug in the United States. Par had that exclusivity for fluoxetine tablets.

64.    During the period before Prozac's patent expired, Par and Alphapharm actively promoted the switching of prescriptions to their fluoxetine tablets. Par repeatedly met with Walgreens to promote such switches, to plan a switching scheme, and to reach various agreements in furtherance of that scheme. Two of those meetings occurred on February 5, 2001 and June 11, 2001. At those meetings, Par and Walgreens discussed the profits to be made from switching prescriptions to tablets, pricing, and various other details concerning the switching scheme. Notably, Par stressed that tablets were easier to swallow when before, in selling ranitidine capsules, Par has stressed that capsules were easier to swallow. Par also specifically promoted the illegal practice of pharmacists filling prescriptions with a different dosage form without contacting the prescribing doctor.

18

65. At the same time defendants were promoting the unlawful switching scheme, other sellers of fluoxetine tablets recognized that the switching scheme was unlawful. At least one other manufacturer, Barr Pharmaceuticals, advised Walgreens that fluoxetine capsules and tablets could not be legally substituted, as they were not therapeutically equivalent.

66. Par also supplied Omnicare with fluoxetine tablets.

67. After Prozac's patent expired on August 1, 2001, there was a period of time before maximum prices for fluoxetine became effective. Part of this was due to the exclusivity period granted to the first generic manufacturer. For that reason and others, no maximum price was established for fluoxetine until December 1, 2002.

68. During the period that generic fluoxetine was marketed before maximum prices were established, defendants priced fluoxetine tablets to incentivize Walgreens, Omnicare, and others to engage in illegal switching. For example, Walgreens' profit for a 30 unit prescription of defendants' 20 mg fluoxetine tablets was $73.67, while the profit for a competitor's capsules was $24.79 – about one-third as much. However, before maximum prices went into effect, state and federal government reimbursements for the tablets and capsules were similar. The government received no savings from defendants' pricing, and often paid more.

69. Walgreens' huge profit differential came from the low wholesale prices Par was offering for its tablets. Since Par had a monopoly on tablets at that time because of its generic exclusivity, its lowball pricing was designed to cause the illegal switching that increased the sales of its tablets far beyond what could have been achieved without the illegal switching. Rather than

19

convince thousands of physicians to change their prescriptions, Par convinced nationwide pharmacies to change the prescriptions without doctors' (or patients') consent.

70.     Pursuant to Walgreens' discussions and agreements with Par, Walgreens set up its pharmaceutical distribution system so that it was virtually impossible to fill a prescription for Prozac or generic fluoxetine with fluoxetine capsules.  Walgreens made defendants' fluoxetine tablets the only form of generic fluoxetine readily available to their retail customers.  Upon receiving capsule prescriptions, Walgreens' pharmacy personnel could not process the orders as written, but instead filled the prescriptions with defendants' tablets.  Thus, even though capsules were prescribed, the prescription was unlawfully filled with defendants' tablets.  A similar system was implemented at Omnicare pharmacies.

71.     Walgreens and Omnicare required their pharmaceutical staff to fill all Prozac and fluoxetine prescriptions with defendants' tablets regardless of what the physician prescribed, in violation of state and federal law.  Even refills of Prozac and fluoxetine capsules were filled with tablets.

72.     Walgreens and Omnicare did not have any system to obtain doctor or patient authorization for the drug switching, or even a system to notify the doctor and patient that the prescribed drug had been switched.  Walgreens and Omnicare did not obtain legitimate doctor or patient authorization for the drug switching.

73.     Par and Alphapharm supplied enormous quantities of fluoxetine tablets in order to effectuate the switching scheme.  The quantity of government reimbursements for defendants' tablets

20

after the switching scheme was implemented dwarfed the number of tablet reimbursements before the scheme.

74.     When the expected government price limits came into effect, defendants, Walgreens and Omnicare reaped the expected benefits of their illegal switching. In Florida, for example, Medicaid reimbursement for 20 mg fluoxetine capsules was 60 cents, while 20 mg tablets paid over twice as much (up to $1.69).     The switching cost the government millions in unnecessary reimbursements.

75.     In 2004, under government scrutiny, Walgreens discontinued the practice of switching defendants' tablets for the capsules prescribed. After the practice was discontinued, the Medicaid reimbursements for fluoxetine capsules dramatically increased, and the reimbursements for defendants' tablets fell to nearly nothing.

### c. Illegal Switching to Defendants' 7.5 mg Buspirone Tablets

76.     Another example of defendants' unlawful conduct involving switching of dosage strengths involved buspirone, a popular anti-anxiety medication. The generic form of busprione was sold when Bristol-Meyer Squib's patent expired in 2001. Before the patent expired, it was readily apparent to Par and the other defendants that common dosage strengths of busprione would be subject to federal and state maximum prices. Busprione is prescribed so that patients can take a 10 mg, 15 mg, or 20 mg dosage 2-3 times daily. Thus, FULs were instituted for the 5 mg, 10 mg, and 15 mg dosage strengths. The FULS are as follows: 5 mg - $0. 29, 10 mg - $0.34, and 15 mg $0.44. The 15 mg dosage strength is most popular and was most often prescribed.

21

77.     Par manufactured and marketed buspirone tablets in a 7.5 mg dosage strength. Par then conspired with Omnicare and other pharmacies to switch patients prescriptions for 15 mg tablets of buspirone to Par's product the 7.5 mg tablet, which was not subject to a FUL.

78.     Omnicare set up its pharmaceutical distribution system so that it was virtually impossible to fill a prescription for buspirone with anything other than Par's 7.5 mg tablets. Omnicare made Par's 7.5 mg buspirone tablets the only form of buspirone readily available to their retail customers. Upon receiving buspirone 15 mg prescriptions, Omnicare's pharmacy personnel could not process the orders as written, but instead filled the prescriptions with defendants' 7.5 mg tablets. Thus, even though 15 mg tablets of buspirone were prescribed, the prescription was unlawfully filled with defendants' 7.5 mg tablets.

79.     Omnicare required their pharmaceutical staff to fill all 15 mg buspirone tablet prescriptions with defendants' 7.5 mg tablets regardless of what the physician prescribed, in violation of state and federal law. Even refills of 15 mg buspirone tablets were filled with 7.5 mg tablets. A similar system was implemented at other pharmacies.

80.     Omnicare and other pharmacies who took part in this scheme did not have any system to obtain doctor or patient authorization for the drug switching, or even a system to notify the doctor and patient that the prescribed drug had been switched. Omnicare and other pharmacies selling Par's 7.5 mg buspirone tablets did not obtain doctor or patient authorization for the drug switching.

81.     Par supplied enormous quantities of 7.5 mg buspirone tablets in order to effectuate the switching scheme. While 15 mg buspirone tablets are subject to a FUL of less than $0.45, Par's

7.5 mg buspirone tablets are reimbursed at a much higher market derived price. The switching cost

the government millions in unnecessary reimbursements.

**C.      Defendants Caused False and Fraudulent Claims and Statements
for Illegally Switched Drugs**

82.      Since at least May 2001, defendants caused Walgreens and other pharmacy providers

to regularly inflate the amount of money billed to the government for prescriptions illegally switched

to defendants' products, different drugs in different dosage forms or strengths, including ranitidine

capsules, fluoxetine tablets, and buspirone tablets. The same switching scheme for different dosage

forms and strengths involved other drugs, such as Selegiline. The ongoing fraudulent practice

described herein involved thousands of relatively small transactions.

83.      When pharmacy customers present prescriptions to be filled to their pharmacists, the

pharmacy bills for those prescriptions according to the insurance held by each customer. For clients

with third-party payor prescription coverage covered in part by the United States or state

governments, pharmacies collect any required co-pay from the customer and submit the remainder

of the price to the government funded third party payor for reimbursement.

84.      Each state decides who is eligible to receive Medicaid services, who is eligible to

provide those services, what services are eligible for reimbursement, the reimbursement levels for

services provided, and the administrative procedure for obtaining reimbursement. Provider

participation in State Medicaid programs is conditioned upon following by regulations and other

legal requirements set by each state. In order to receive Medicaid reimbursement from a state,

pharmacies must complete an enrollment application including certain provider agreements and

certifications as a prerequisite to, and condition of, participation and receiving payments. For

example, in Illinois, in the "Enrollment Application" and "Agreement for Participation in the Illinois Medical Assistance Program" providers must attest to professional license and Drug Enforcement Administration identification numbers and must make the following certifications:

2. The provider agrees, on a continuing basis, to comply with applicable licensing standards as contained in the State laws or regulations.

[...]

4. The Provider agrees, on a continuing basis, to comply with Federal standards specified in Title XIX of the Social Security Act, and also with all applicable Federal and State laws and regulations.

5. The Provider agrees to be fully liable for the truth, accuracy, and completeness of all claims submitted electronically or on hard copy to the Department for Payment. Any submittals of false or fraudulent claims or any concealment of a material fact may be prosecuted under applicable Federal and State laws.

85.     Similarly, the State of Florida's provider agreements include the following certifications:

(2) Quality of Service. The provider agrees that services or goods billed to the Medicaid program must be medically necessary, of a quality comparable to those furnished by the provider's peers, and within the parameters permitted by the provider's license or certification.

(3) Compliance. The provider agrees to comply with local, state, and federal laws, as well as rules, regulations, and statements of policy applicable to the Medicaid program, including the Medicaid Provider Handbooks issued by AHCA [Florida Agency for Healthcare Administration].

86.     Additionally, the Florida "Medicaid Pharmacy Point of Service Provider Certification Agreement" requires the following certifications:

3. The Provider shall safeguard the Medicaid program against abuse in its utilization of claims entry through the POS [Point of Sale] system.

[...]

24

8. The Provider shall abide by all Federal and State statutes, rules, regulations and manuals governing the Florida Medicaid program and those conditions as set out in the State of Florida, Agency for Health Care Administration Medicaid Provider Agreement entered into previously.

All other states likewise condition provider participation through their substantially similar provider enrollment applications and agreements.

87.     Each state assigns providers a unique identification number which is included on every electronic claim for reimbursement. Affixing this number to a claim certifies, under the state's Medicaid regulations, that as a Medicaid provider, the pharmacy is in compliance with all applicable federal and state laws and regulations. In order to receive reimbursement from state Medicaid, providers must submit invoices (typically in the form of electronic claims submissions) for the services provided to Medicaid beneficiaries. These certifications are a prerequisite to and condition of payment.

88.     For example, as part of each electronic submission to the Illinois Department of Healthcare and Family Services ("HFS," formerly "Illinois Department of Public Aid"), for example, Walgreens affixes its unique Medicaid provider identification number, which serves as an electronic stamp indicating that, as a Medicaid provider, Walgreens is in compliance with all applicable federal and state regulations.

89.     The Illinois Medical Assistance Handbook referred to in the Billing Certification, which was and is made available to each provider enrolled in the program, makes reimbursement expressly conditioned on the provider's "full compliance with applicable federal and state laws, Department Administrative Rules (89 Il. Adm. Code Chapter 101), the general provisions contained

25

in Chapter 100, General Policies and Procedures, and the policy and procedures contained in Chapter A-200 in the Handbook that applies specifically to medical providers." In order to be enrolled as a Medicaid provider, the pharmacy must hold a valid, appropriate license and "[t]he provider shall agree to comply with the requirements of federal and State laws and not engage in practices prohibited by such laws." 89 Ill. Adm. Code 140.11 and 140.12.

90.     Likewise, the Florida Agency for Health Care Administration ("AHCA"), which administers Medicaid, makes payments "only to an individual or entity who has a provider agreement in effect with the agency, who is performing services or supplying goods in accordance with federal, state, and local law." Fl. Stat. §409.907. All states have similar provisions conditioning payment to providers.

91.     Walgreens, Omnicare, and other pharmacy providers submit to Medicaid and other third-party payors claims for instantaneous "adjudication" via computer networks connected to government payor sources (e.g., the Illinois Department of Revenue) or third-party subcontractors who handle processing prescription claims for government third party payors. An "adjudication" involves determining how much of the prescription cost the government third party payor will pay.

92.     Claims are adjudicated instantaneously; pharmacy providers are given a chance to resubmit rejected claims and are reimbursed on a monthly basis by the state agency responsible for Medicaid reimbursements (e.g., the HFS or AHCA) for all approved Medicaid claims. Therefore, Walgreens, Omnicare, and other pharmacy providers, who switch prescriptions to dispense defendants' drugs, in different dosage forms or strengths than were prescribed, make representations and claims to the government concerning Medicaid reimbursement on a daily basis.

26

93.     As a result of these claims for payment, state medicaid agencies, such as HFS,
routinely authorize the state fiscal agent, such as the Illinois Comptroller, to make payments to
providers for services provided.

94.     Reimbursement rates for Medicaid prescriptions are determined on a state-by-state
basis. For example, in Florida, providers are "reimbursed the least of the amount billed by the
provider, the provider's usual and customary charge, or the Medicaid maximum allowable fee
established by the agency, plus a dispensing fee." Fl. Stat. §409.908(14). Florida calculates its
Medicaid maximum allowable fee "based on the lower of: average wholesale price (AWP) minus
15.4 percent, wholesaler acquisition cost (WAC) plus 5.75 percent, the federal upper limit (FUL),
the state maximum allowable cost (SMAC), or the usual and customary (UAC) charge billed by the
provider." Fl. Stat. §409.908(14).

95.     In Illinois, Medicaid prescription claims are paid at the lower of two rates: (1) the
pharmacy's prevailing charge to the general public or (2) the Illinois Department of Healthcare and
Family Services' maximum price (MAC) plus an established dispensing fee. 89 Il. Adm. Code.
140.445. Generally, pharmacies make higher profits on medications for which HFS has not set a
MAC.

96.     Illinois sets maximum prices different than a pharmacy's prevailing charge to the
general public for several frequently-prescribed medications in order to control Medicaid pharmacy
program costs. When HFS intends to set a maximum price for a frequently prescribed medication,
it sets the price according to federal and state guidelines at a rate that allows the pharmacy a small
distribution fee.

27

97.     As discussed above, for the specific medications at issue in the instant case, one dosage form of the generic form of a branded drug has a maximum price different from the prevailing market price while another dosage form that is infrequently prescribed does not. For example, the tablet form of ranitidine is reimbursed at a maximum rate determined by federal and state regulations while the defendants' product, the capsule form, was reimbursed at the prevailing price. Thus, defendants' scheme resulted in Illinois and other states paying much more than they would have had defendants' acted lawfully.

98.     Defendants have within their exclusive possession and control documents that would allow plaintiffs to plead this fraud with greater specificity, including specific damages. Documents that would reflect the fraud include: the original prescriptions submitted by pharmacy customers compared with the orders entered into pharmacy data system; changes in pharmacy billings for ranitidine, fluoxetine, and buspirone demonstrating a sudden and abrupt changes in dispensed dosage form and strength and a sharp increase in reimbursements; defendants' promotional materials; agreements among the defendants, Walgreens, Omnicare and other pharmacies; records of meetings and communications among the defendants, Walgreens, Omnicare and other pharmacies; wholesale order records for ranitidine and fluoxetine capsules and tablets and 7.5 mg and 15 mg dosage strengths of buspirone. Federal and state privacy laws, such as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), also restrict plaintiff relator's ability to obtain information about specific prescriptions.

28

## VI. DAMAGES TO THE GOVERNMENT

99. This fraud was instigated by Par, Reddy and Alphapharm through defendants' marketing of its drug products to Walgreens, Omnicare, and other pharmacies nationwide. Therefore, similar false claims were made to and paid by, and may continue to be currently made to and paid by, all states' Medicaid programs where defendants products were sold. The fraud involved multiple drugs.

100. The scheme described above also defrauds the government through any reimbursements for defendants' illegally switched drugs made by Medicare, Champus and other government programs.

101. From at least May, 2001 to at least October, 2004 and possibly continuing thereafter, by reason of the conduct described above, the government has been damaged in an amount that is believed to be in excess of $2,000,000 from Illinois Medicaid reimbursements for illegally switched drugs alone. As defendants' fraudulent practices extended through the Walgreens nationwide company and others in states where government reimbursement rates make such fraud lucrative for Par and the other defendants, the amount of total damages to the government exceeds $10,000,000.

## VII. DAMAGES UNDER THE ILLINOIS INSURANCE CLAIMS FRAUD AND PREVENTION ACT

102. The Insurance Claims Fraud Prevention Act ("ICFPA"), 740 ILCS 92/1 *et seq.*, provides that "[a] person who violates any provision of this Act or Article 46 of the Criminal Code of 1961 [720 ILCS 5/46] shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than $5,000 nor more than $10,000, plus an assessment of not

29

more than 3 times the amount of each claim for compensation under a contract of insurance." 740

ILCS 92/5(b).

103.    Article 46 of the Criminal Code of 1961 delineates insurance fraud as follows:

> A person commits the offense of insurance fraud when he or she knowingly obtains,
> attempts to obtain, or causes to be obtained, by deception, control over the property
> of an insurance company or self-insured entity by the making of a false claim or by
> causing a false claim to be made on any policy of insurance issued by an insurance
> company or by the making of a false claim to a self-insured entity permanently of the
> use and benefit of that property.

720 ILCS 5/46-1(d)(5).

104.    Article 46 of the Criminal Code of 1961, 720 ILCS 5/46, also defines "false claim"

broadly as:

> [A]ny statement made to any insurer purported insurer, servicing corporation,
> insurance broker, or insurance agent, or any agent or employee of the entities,
> and made as part of, or in support of, a claim for payment or other benefit
> under a policy of insurance … when the statement contains any false,
> incomplete, or misleading information concerning any fact or thing material
> to the claim…

720 ILCS 5/46-1(d)(5).

105.    The ICFPA's *qui tam* provision, 740 ILCS 92/15, provides that any interested person

may bring a civil action, in the name of the State of Illinois, for violations of 740 ILCS 92/1 *et seq.*,

and by incorporation, 720 ILCS 5/46-1.

106.    Numerous private insurers reimbursed defendants for drugs during the time of this

complaint including, but are not limited to, United Healthcare, Blue Cross and Blue Shield, Health

Alliance, and Humana.

107. In order to obtain reimbursement from insurers for services provided, pharmacies typically would submit electronically a form describing the services, the service date, the total charges and non-covered charges, if any. These bills for reimbursement would typically be submitted by pharmacies on a daily basis. The bills would contain various certifications and/or verifications, including that the claim for reimbursement is correct and complete, and a warning that anyone who misrepresents or falsifies material information requested by the form may be subject to fine or imprisonment under state law.

108. Pharmacies submitted electronic claims or bills to insurers for the prescription drugs, including but not limited to ranitidine capsules, fluoxedine tablets, and 7.5 mg buspirone tablets. Defendants caused pharmacies through their conspiracy to bill insurers for such drugs even though the drugs were unilaterally switched without a properly authorized physician's prescription.

109. Private insurers typically set maximum prices for prescription drugs that are based on governmental limits. Defendant manufacturers never informed insurers that they were paying for drugs as part of a conspiracy to evade FULs, state MACs, and other price obligations set by insurance companies or that defendants conspired to switch drugs without a physician's informed authorization. By concealing these policies and practices, but then causing claims to be submitted to insurers for payment, defendants intentionally conspired to deceive and caused to be made false, incomplete, and/or misleading statements of material facts to insurers in order to obtain reimbursement for illegally switched drugs from insurers payment for which pharmacies were not entitled. Insurers, unaware of the falsity of the claims because defendants and their conspirators

31

failed to disclose the material facts, paid the claims submitted by pharmacies including Walgreens in connection with the drug prescriptions.

110.    Defendants knowingly and intentionally conspired to, and caused false claims for payment to be submitted for prescription drugs: from at least 2001 to date in violation of the Illinois Insurance Claims Fraud Prevention Act.

## COUNT I
### False Claims Act

111.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein.  This Count is brought by Lisitza in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for defendants' violation of 31 U.S.C. §3729.

112.    By virtue of the above-described acts, among others, defendants knowingly caused to be presented, and possibly continues to cause to be presented, directly or indirectly to officers, employees or agents of the United States, false or fraudulent claims for payment or approval for defendants' illegally switched drugs.

113.    By virtue of the above-described acts, among others, defendants knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the United States for false or fraudulent claims for defendants' illegally switched drugs.

114.    By virtue of the above-described acts, defendants conspired to defraud the United States by getting a false or fraudulent claim allowed or paid.

115.    The false or fraudulent claims to the United States were material.

32

116.    Plaintiff United States, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof, paid and may continue to pay for defendants' illegally switched drugs.

117.    The United States sustained damages because of the defendants' actions.

## COUNT II
### Illinois Whistleblower Reward and Protection Act

118.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the United Sates under the qui tam provisions of 31 U.S.C. §3730 for defendants' violation of 31 U.S.C. §3729.

119.    Defendants, at all times relevant to this action, sold and continue to sell pharmaceuticals in Illinois that were and will be paid for by the State. Defendants, at all times relevant to this action, sold its pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the Illinois for distribution to Illinois residents. Through defendants marketing and sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and 7.5 mg buspirone to Walgreens, Omnicare, and other pharmacies in the State of Illinois, defendants knowingly caused, and conspired in, the presentation of false claims to Illinois Medicaid.

120.    In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Illinois must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing Illinois Medicaid.

33

121.    On a daily basis, Walgreens, Omnicare, and other Illinois pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the Illinois Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

122.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Illinois each prescription drug is identified by a unique National Drug Code ("NDC") number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

123.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Illinois regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies'

34

reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

124. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Illinois' pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, 410 ILCS 620/3 and 3.14.

125. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Illinois Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

126. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Illinois Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Illinois for defendants' illegally switched drugs that violated Illinois and/or Federal law and omitted material facts.

127. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Illinois Medicaid provider agreement and State and Federal law.

35

128.    By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Illinois, false or fraudulent claims for payment or approval for defendants' products.

129.    By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Illinois for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

130.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Illinois by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

131.    The false or fraudulent claims to the State of Illinois were material.

132.    Plaintiff State of Illinois, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay defendants for illegally-switched prescriptions.

133.    The State of Illinois sustained damages because of the defendants' actions.

36

## COUNT III
### Illinois Insurance Claims Fraud Prevention Act

134.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-105 as if fully set forth herein.  This Count is brought by Lisitza in the name of the State of Illinois under the *qui tam* provisions of the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/15.

135.    Relator is an interested person with direct, personal knowledge of the allegations of this complaint, who has brought this action pursuant to 740 ILCS 92/1 *et seq.* on behalf of himself and the State of Illinois.

136.    By committing the acts alleged above, Par and the other defendants violated 740 ILCS 92/1 *et seq.* by repeatedly, willfully and intentionally causing to be obtained, by deception, control over the property of insurance companies by causing a false claim to be made on insurance policies.

137.    By committing the acts alleged above, Par and the other defendants violated 740 ILCS 92/1 *et seq.* by repeatedly, willfully and intentionally conspiring to and causing false claims for reimbursement to insurers to be submitted for prescription drugs that were provided to patients in evasion of best price contractual agreements with insurers and through illegal switching of drugs without informed physician authorization from 2001 to date.

138.    By concealing and/or by failing to disclose the fact that the claims to be submitted to insurers were for prescription drugs provided to patients that were the result of evading the best price and switching drugs without informed physician authorization, defendants made and/or caused to be made a false statement or record.

139.    By failing to disclose and actively concealing that claims submitted to insurers were for prescription drugs provided to patients that were the result of evading the best price and

switching drugs without informed physician authorization, the claims Defendants conspired to, and

caused to be submitted to insurers contained false, incomplete and misleading information that was

material to the claim. The information was material because insurers would have wanted to know

that defendants were not complying with pharmacy laws and were inflating drug prices.

140.    Insurers were unaware of the falsity of the records, statements and claims made or

caused to be made by Defendants involving defendants' illegal prescription drug provision at the

time the insurers reimbursed defendants and pharmacies for defendants' illegally switched drugs.

141.    Each claim for reimbursement from an insurer that Defendants conspired to, or caused

to be submitted for providing prescription drugs represents a false claim. Each claim for

reimbursement for drug prescriptions also represents an unlawful claim and/or a false or fraudulent

claim for payment.

142.    As a result of the pharmacies' certified claims for payment in their reimbursement

submissions to the private insurers, private insurers routinely made payments to the co-conspirator

pharmacies for defendants' illegally switched drugs.

143.    Plaintiffs cannot at this time identify all of the false claims for payment that were

caused by Defendants' conduct. This information is solely within the possession of Defendants and

their co-conspirator pharmacy partners.

## COUNT IV
## California False Claims Act

144.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth

herein. This Count is brought by Lisitza in the name of the State of California under the *qui tam*

provisions of the California False Claims Act, California Government Code §12651(a).

38

145. Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in California that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the California for distribution to California residents. Through defendants' marketing and sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets to Walgreens, Omnicare, other pharmacies in the State of California, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to California Medicaid.

146. In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in California must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing California Medicaid.

147. On a daily basis, Walgreens and other California pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the California Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

148.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed.    On each electronic reimbursement claim to the State of California each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

149.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of California regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

150.    Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law.    Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products

40

did not comply with California's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See e.g., Cal. Bus. & Prof. Code §4073.

151.     As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, California Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

152.     Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their California Medicaid provider agreements and individual billing certifications by making claims for payment to the State of California for defendants' illegally switched drugs that violated California and/or Federal law and omitted material facts .

153.     Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their California  Medicaid provider agreement and State and Federal law.

154.     By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of  California, false or fraudulent claims for payment or approval for defendants' products.

155.     By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain

41

payment from the State of California for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

156. By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of California by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

157. The false or fraudulent claims to the State of California were material.

158. Plaintiff State of California, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

159. The State of California sustained damages because of the defendants' actions.

### COUNT V
### Delaware False Claims and Reporting Act

160. Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Delaware under the *qui tam* provisions of the Delaware False Claims and Reporting Act, Del. Code Title VI, §1201.

161. Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in Delaware that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the Delaware for distribution to Delaware residents. Through defendants' marketing and sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in the State of Delaware, Par and the other

42

defendants knowingly caused, and conspired in, the presentation of false claims to Delaware Medicaid.

162.    In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Delaware must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing Delaware Medicaid.

163.    On a daily basis, Walgreens and other Delaware pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the Delaware Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

164.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Delaware each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units),

43

#49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11 #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

165.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Delaware regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

166.    Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Delaware's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, 24 Del. Code §2502.

167.    As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Delaware Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

168. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Delaware Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Delaware for defendants' illegally switched drugs that violated Delaware and/or Federal law and omitted material facts .

169. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Delaware Medicaid provider agreement and State and Federal law.

170. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Delaware, false or fraudulent claims for payment or approval for defendants' products.

171. By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Delaware for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

172. By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Delaware by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

45

173.    The false or fraudulent claims to the State of Delaware were material.

174.    Plaintiff State of Delaware, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

175.    The State of Delaware sustained damages because of the defendants' actions.

## COUNT VI
### District of Columbia False Claims Act

176.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the District of Columbia under the *qui tam* provisions of D.C. Code. §2-308.13 *et seq.*

177.    Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the District of Columbia that were and will be paid for by the District of Columbia. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the District of Columbia for distribution to the District of Columbia residents. Through defendants' marketing and sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in the District of Columbia, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to the District of Columbia Medicaid. program.

178.    In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in the District of Columbia must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they

46

will comply with all applicable federal and state laws and regulations governing the District of Columbia Medicaid program.

179.    On a daily basis, Walgreens and other District of Columbia pharmacies batch Medicaid claims and submit them electronically to the District of Columbia. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the District of Columbia: (1) that the submissions comply with all applicable federal and District of Columbia laws and regulations, governing the District of Columbia Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

180.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the District of Columbia each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11 #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

181.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the District of Columbia regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine

47

capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with District of Columbia and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

182. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of the District of Columbia pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with the District of Columbia's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency.

183. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the District of Columbia Medicaid agency, District of Columbia Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

184. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their District of Columbia Medicaid provider agreements and individual billing certifications by making claims for payment to the District of Columbia for defendants' illegally switched drugs that violated the District of Columbia and/or Federal law and omitted material facts .

48

185.    Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their District of Columbia Medicaid provider agreement, law, and Federal law.

186.    By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the District of Columbia, false or fraudulent claims for payment or approval for defendants' products.

187.    By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the District of Columbia for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

188.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the District of Columbia by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

189.    The false or fraudulent claims to the District of Columbia were material.

190.    Plaintiff District of Columbia, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

191.    The District of Columbia sustained damages because of the defendants' actions.

49

## COUNT VII
## Florida False Claims Act

192. Plaintiff incorporates by reference and re-alleges Paragraphs 1-96 as if fully set forth herein. This Count is brought on behalf of the State of Florida under the qui tam provisions of the Florida False Claims Act, Fl. Stat. §§ 68.081-68.09.

193. Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Florida that were and will be paid for by the State of Florida. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the State of Florida for distribution to Florida residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in the State of Florida, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Florida Medicaid.

194. In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Florida must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws, regulations, and manuals governing Florida Medicaid.

195. On a daily basis, Walgreens and other Florida pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State of Florida: (1) that the

50

submissions comply with all applicable federal and state laws, regulations, and manuals governing the Florida Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts. Further, Florida Medicaid providers must agree to safeguard the Medicaid program against abuse, *e.g.*, unnecessary costs, resulting from use of the electronic claims submission system.

196.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Florida, each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11 #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

197.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Florida regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

51

198.    Walgreens, Omnicare, and other pharmacies  sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law.  Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Florida's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, Fl. Stat. § 465.025. Walgreens, Omnicare, and other pharmacies additionally did not comply with State Medicaid requirements for pharmaceutical cost-savings and pharmaceutical medical necessity where they illegal filled prescriptions with defendants' products in a switched dosage form. See *e.g.*, Fl. Admin. Code 59G-1.010(166) (a) (4).

199.    As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Florida Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

200.    Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Florida Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Florida for defendants' illegally switched drugs that violated Florida and/or Federal law and omitted material facts.

52

201.     Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Florida Medicaid provider agreement and State and Federal law.

202.     By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Florida, false or fraudulent claims for payment or approval for defendants' products.

203.     By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Florida for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

204.     By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Florida by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

205.     The false or fraudulent claims to the State of Florida were material.

206.     Plaintiff State of Florida, being unaware of the falsity of the claims and/or statements caused, or caused to be made, by defendants, and in reliance on the accuracy thereof, paid and may continue to pay for illegally switched drugs.

207.     The State of Florida sustained damages because of the defendants' actions.

53

## COUNT VIII
### Hawaii False Claims Act

208. Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Hawaii under the *qui tam* provisions of Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*

209. Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Hawaii that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the State of Hawaii for distribution to Hawaii residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in the State of Hawaii, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Hawaii Medicaid.

210. In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Hawaii must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing Hawaii Medicaid.

211. On a daily basis, Walgreens and other Hawaii pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the Hawaii Medicaid program;

54

(2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

212.     By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed.  On each electronic reimbursement claim to the State of Hawaii each prescription drug is identified by a unique NDC number.  The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11 #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

213.     On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Hawaii regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets.  Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws.  Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

214.     Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law.  Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by

55

defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Hawaii's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, Haw. Rev. Stat. §328.91.

215.    As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Hawaii Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

216.    Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Hawaii Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Hawaii for defendants' illegally switched drugs that violated Hawaii and/or Federal law and omitted material facts.

217.    Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Hawaii Medicaid provider agreement and State and Federal law.

218.    By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Hawaii, false or fraudulent claims for payment or approval for defendants' products.

56

219. By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Hawaii for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

220. By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Hawaii by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

221. The false or fraudulent claims to the State of Hawaii were material.

222. Plaintiff State of Hawaii, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

223. The State of Hawaii sustained damages because of the defendants' actions.

## COUNT IX
### Indiana False Claims Act

224. Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Indiana under the *qui tam* provisions of Indiana False Claims Act, Ind. Code. §5-11-5.5 *et seq*.

225. Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Indiana that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other

57

pharmacies in the State of Indiana for distribution to Indiana residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in the State of Indiana, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Indiana Medicaid.

226. In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Indiana must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing Indiana Medicaid.

227. On a daily basis, Walgreens and other Indiana pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the Indiana Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

228. By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Indiana each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC

58

numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

229.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Indiana regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

230.    Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Indiana's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, Ind. Code §16-42-22-4.

231. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Indiana Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

232. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Indiana Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Indiana for defendants' illegally switched drugs that violated Indiana and/or Federal law and omitted material facts.

233. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Indiana Medicaid provider agreement and State and Federal law.

234. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Indiana, false or fraudulent claims for payment or approval for defendants' products.

235. By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Indiana for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

60

236.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Indiana by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

237.    The false or fraudulent claims to the State of Indiana were material.

238.    Plaintiff State of Indiana, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

239.    The State of Indiana sustained damages because of the defendants' actions.

## COUNT X
## Louisiana Medical Assistance Programs Integrity Law

240.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Louisiana under the *qui tam* provisions of the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §46:439.

241.    Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Louisiana that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the State of Louisiana for distribution to Louisiana residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in Louisiana, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Louisiana Medicaid.

61

242.     In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Louisiana must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing Louisiana Medicaid.

243.     On a daily basis, Walgreens and other Louisiana pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the Louisiana Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

244.     By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Louisiana each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

245. On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Louisiana regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

246. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Louisiana's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, La. Rev. Stat. 36:1163.

247. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Louisiana Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

248. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Louisiana Medicaid provider

agreements and individual billing certifications by making claims for payment to the State of Louisiana for defendants' illegally switched drugs that violated Louisiana and/or Federal law and omitted material facts .

249.    Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Louisiana Medicaid provider agreement and State and Federal law.

250.    By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Louisiana, false or fraudulent claims for payment or approval for defendants' products.

251.    By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Louisiana for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

252.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Louisiana by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

253.    The false or fraudulent claims to the State of Louisiana were material.

64

254.    Plaintiff State of Louisiana, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

255.    The State of Louisiana sustained damages because of the defendants' actions.

**COUNT XI**
**Massachusetts False Claims Act**

256.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the Commonwealth of Massachusetts under the *qui tam* provisions of the Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A).

257.    Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the Commonwealth of Massachusetts that were and will be paid for by the commonwealth. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in Massachusetts for distribution to Massachusetts residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in Massachusetts, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Massachusetts Medicaid.

258.    In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Massachusetts a must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will

65

comply with all applicable federal and commonwealth laws and regulations governing Massachusetts Medicaid.

259.    On a daily basis, Walgreens and other Massachusetts pharmacies batch Medicaid claims and submit them electronically to the commonwealth. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the commonwealth: (1) that the submissions comply with all applicable federal and commonwealth laws and regulations, governing the Massachusetts Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

260.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the Commonwealth of Massachusetts each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

261.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the Commonwealth of Massachusetts regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited

66

from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with commonwealth and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including Ranitidine capsules and Fluoxetine tablets were false and/or fraudulent.

262. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of commonwealth and pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Massachusetts's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, 130 CMR 406.402. Walgreens, Omnicare, and other pharmacies additionally did not comply with the Commonwealth of Massachusetts Medicaid requirements for pharmaceutical cost-savings and pharmaceutical medical necessity where they illegal filled prescriptions with defendants' products in a switched dosage form. See *e.g.*, 130 CMR 450.204(A)(2).

263. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the commonwealth Medicaid agency, Massachusetts Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

264. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Massachusetts Medicaid

provider agreements and individual billing certifications by making claims for payment to the Commonwealth of Massachusetts for defendants' illegally switched drugs that violated Massachusetts and/or Federal law and omitted material facts.

265.    Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Massachusetts Medicaid provider agreement and commonwealth and Federal law.

266.    By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the Commonwealth of Massachusetts, false or fraudulent claims for payment or approval for defendants' products.

267.    By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the Commonwealth of Massachusetts for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

268.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the Commonwealth of Massachusetts by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

269.    The false or fraudulent claims to the Commonwealth of Massachusetts were material.

68

270.    Plaintiff Commonwealth of Massachusetts, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

271.    The Commonwealth of Massachusetts sustained damages because of the defendants' actions.

**COUNT XII**
**Michigan Medicaid False Claims Act**

272.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Michigan under the *qui tam* provisions of Michigan Medicaid False Claims Act, Mich. Comp. Laws §400.601 *et seq.*

273.    Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Michigan that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the State of Michigan for distribution to Michigan residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in the State of Michigan, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Michigan Medicaid.

274.    In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Michigan must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider

69

and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing Michigan Medicaid.

275.    On a daily basis, Walgreens and other Michigan pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the Michigan Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

276.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Michigan each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

277.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Michigan regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these

70

products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

278.    Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Michigan's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, Mich. Comp. Laws §333.17755.

279.    As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Michigan Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

280.    Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Michigan Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Michigan for defendants' illegally switched drugs that violated Michigan and/or Federal law and omitted material facts.

281. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Michigan Medicaid provider agreement and State and Federal law.

282. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Michigan, false or fraudulent claims for payment or approval for defendants' products.

283. By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Michigan for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

284. By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Michigan by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

285. The false or fraudulent claims to the State of Michigan were material.

286. Plaintiff State of Michigan, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

287. The State of Michigan sustained damages because of the defendants' actions.

72

## COUNT XIII
## Montana False Claims Act

288.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth

herein. This Count is brought by Lisitza in the name of the State of Montana under the *qui tam*

provisions of Montana False Claims Act, Mont. Code §17-8-401 *et seq.*

289.     Defendants, at all times relevant to this action, sold and continues to sell

pharmaceuticals in the State of Montana that were and will be paid for by the State. Defendants,

at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other

pharmacies in the State of Montana for distribution to Montana residents. Through defendants' sale

of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone

tablets, to Walgreens, Omnicare, and other pharmacies in the State of Montana, Par and the other

defendants knowingly caused, and conspired in, the presentation of false claims to Montana

Medicaid.

290.     In order to be eligible to receive Medicaid reimbursement for defendants' products

and other prescription drugs, pharmacies in Montana must submit an enrollment form and execute

an application agreement to obtain a provider number. In agreeing to become a Medicaid provider

and receive a unique provider number, pharmacies specifically represent that they will comply with

all applicable federal and state laws and regulations governing Montana Medicaid.

291.     On a daily basis, Walgreens and other Montana pharmacies batch Medicaid claims

and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes

its unique Medicaid provider identification number. In making such reimbursement submissions,

Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply

with all applicable federal and state laws and regulations, governing the Montana Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

292. By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Montana each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

293. On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Montana regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

294. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens,

Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Montana's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, Mont. Code §37-7-505.

295. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Montana Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

296. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Montana Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Montana for defendants' illegally switched drugs that violated Montana and/or Federal law and omitted material facts.

297. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Montana Medicaid provider agreement and State and Federal law.

298. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Montana, false or fraudulent claims for payment or approval for defendants' products.

299.     By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Montana for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

300.     By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Montana by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

301.     The false or fraudulent claims to the State of Montana were material.

302.     Plaintiff State of Montana, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

303.     The State of Montana sustained damages because of the defendants' actions.

## COUNT XIV
## Nevada False Claims Act

304.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein.  This Count is brought by Lisitza in the name of the State of Nevada under the *qui tam* provisions of Nev. Rev. Stat. §357.010 *et seq.*, "Submissions of False Claims to State or Local Government."

305.     Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Nevada that were and will be paid for by the State.  Defendants, at

76

all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in Nevada for distribution to Nevada residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in Nevada, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Nevada Medicaid.

306.    In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Nevada a must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing Nevada Medicaid

307.    On a daily basis, Walgreens and other Nevada pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the Nevada Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

308.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Nevada each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage

77

strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

309.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Nevada regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

310.    Walgreens, Omnicare, and other pharmacies  sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law.  Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Nevada's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, Nev. Rev. Stat. §639.2583.

311. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Nevada Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

312. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Nevada Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Nevada for defendants' illegally switched drugs that violated Nevada and/or Federal law and omitted material facts .

313. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Nevada Medicaid provider agreement and State and Federal law.

314. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Nevada, false or fraudulent claims for payment or approval for defendants' products.

315. By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Nevada for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

316.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Nevada by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

317.    The false or fraudulent claims to the State of Nevada were material.

318.    Plaintiff State of Nevada, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay defendants for illegally-switched prescriptions.

319.    The State of Nevada sustained damages because of the defendants' actions.

## COUNT XV
## New Hampshire Medicaid Fraud and False Claims Act

320.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of New Hampshire under the *qui tam* provisions of New Hampshire Medicaid Fraud and False Claims Act, N.H. Rev. Stat. §167:61 *et seq.*

321.    Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of New Hampshire that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the State of New Hampshire for distribution to New Hampshire residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in the State

80

of New Hampshire, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to New Hampshire Medicaid.

322. In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in New Hampshire must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing New Hampshire Medicaid.

323. On a daily basis, Walgreens and other New Hampshire pharmacies batch Medicaid claims and submit them electronically to the State. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the New Hampshire Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

324. By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of New Hampshire each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules

81

300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

325.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of New Hampshire regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies'    reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

326.    Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law.    Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with New Hampshire's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, N.H. Rev. Stat. §164:B:1.

327.    As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, New Hampshire Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

328. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their New Hampshire Medicaid provider agreements and individual billing certifications by making claims for payment to the State of New Hampshire for defendants' illegally switched drugs that violated New Hampshire and/or Federal law and omitted material facts.

329. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their New Hampshire Medicaid provider agreement and State and Federal law.

330. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of New Hampshire, false or fraudulent claims for payment or approval for defendants' products.

331. By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of New Hampshire for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

332. By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of New Hampshire by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

83

333.     The false or fraudulent claims to the State of New Hampshire were material.

334.     Plaintiff State of New Hampshire, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

335.     The State of New Hampshire sustained damages because of the defendants' actions.

### COUNT XVI
### New Mexico Medicaid False Claims Act

336.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of New Mexico under the *qui tam* provisions of the New Mexico Medicaid False Claims Act, N.M. Stat. §27-14-1 *et seq.*

337.     Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of New Mexico that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in the State of New Mexico for distribution to New Mexico residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in the State of New Mexico, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to New Mexico Medicaid.

338.     In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in New Mexico must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid

84

provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing New Mexico Medicaid.

339.    On a daily basis, Walgreens and other New Mexico pharmacies batch Medicaid claims and submit them electronically to the State.    As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number.    In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and regulations, governing the New Mexico Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

340.    By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed.    On each electronic reimbursement claim to the State of New Mexico each prescription drug is identified by a unique NDC number.    The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

341.    On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of New Mexico regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets.    Par and the other defendants profited from sale

of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

342. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with New Mexico's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See e.g., N.M. Stat. §26-3-3.

343. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, New Mexico Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

344. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their New Mexico Medicaid provider agreements and individual billing certifications by making claims for payment to the State of New Mexico for defendants' illegally switched drugs that violated New Mexico and/or Federal law and omitted material facts.

86

345.    Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their New Mexico Medicaid provider agreement and State and Federal law.

346.    By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of New Mexico, false or fraudulent claims for payment or approval for defendants' products.

347.    By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of New Mexico for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

348.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of New Mexico by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

349.    The false or fraudulent claims to the State of New Mexico were material.

350.    Plaintiff State of New Mexico, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

351.    The State of New Mexico sustained damages because of the defendants' actions.

## COUNT XVII
### Tennessee Medicaid False Claims Act

352.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein.  This Count is brought by Lisitza in the name of the State of Tennessee under the *qui tam* provisions of the Tennessee Medicaid False Claims Act, Tenn. Code §71-5-181 *et seq.*

353.     Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Tennessee that were and will be paid for by the State.  Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in Tennessee for distribution to Tennessee residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in Tennessee, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Tennessee Medicaid.

354.     In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Tennessee  a must submit an enrollment form and execute an application agreement to obtain a provider number.  In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and state laws and regulations governing Tennessee  Medicaid.

355.     On a daily basis, Walgreens and other Tennessee pharmacies batch Medicaid claims and submit them electronically to the State.  As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number.  In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and state laws and  regulations, governing the Tennessee Medicaid

88

program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

356. By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the State of Tennessee each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

357. On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the State of Tennessee regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

358. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by

defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Tennessee's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, Tenn. Code §39-17-241.

359. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Tennessee Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

360. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Tennessee Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Tennessee for defendants' illegally switched drugs that violated Tennessee and/or Federal law and omitted material facts .

361. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Tennessee Medicaid provider agreement and State and Federal law.

362. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Tennessee, false or fraudulent claims for payment or approval for defendants' products.

363.    By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Tennessee for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

364.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Tennessee by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

365.    The false or fraudulent claims to the State of Tennessee were material.

366.    Plaintiff State of Tennessee, being unaware of the falsity of the claims and/or statements made by, or caused to be made, defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

367.    The State of Tennessee sustained damages because of the defendants' actions.

**COUNT XVIII**
**Texas Medicaid Fraud Prevention Act**

368.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Texas under the *qui tam* provisions of the Texas Medicaid Fraud Prevention Act, Tx. Hum. Res. Code §36.101 *et seq*

369.    Defendants, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Texas that were and will be paid for by the State. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other

pharmacies in Texas for distribution to Texas residents. Through defendants' sale of certain

pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to

Walgreens, Omnicare, and other pharmacies in Texas, Par and the other defendants knowingly

caused, and conspired in, the presentation of false claims to Texas Medicaid..

370.     In order to be eligible to receive Medicaid reimbursement for defendants' products

and other prescription drugs, pharmacies in Texas must submit an enrollment form and execute an

application agreement to obtain a provider number.  In agreeing to become a Medicaid provider and

receive a unique provider number, pharmacies specifically represent that they will comply with all

applicable federal and state laws and regulations governing Texas Medicaid.

371.     On a daily basis, Walgreens and other Texas pharmacies batch Medicaid claims and

submit them electronically to the State.  As part of each electronic claim, a pharmacy affixes its

unique Medicaid provider identification number.  In making such reimbursement submissions,

Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply

with all applicable federal and state laws and regulations, governing the Texas Medicaid program;

(2) that the information submitted is true, accurate and complete; and (3) that there is no concealment

or falsification of material facts.

372.     By submitting requests for reimbursements, Walgreens, Omnicare, and other

pharmacies represent that they are seeking reimbursement for the drug prescribed.  On each

electronic reimbursement claim to the State of Texas each prescription drug is identified by a unique

NDC number.  The NDC number reflects the specific manufacturer, dosage form and dosage

strength of the drug on the claim form. For example, the following Par products have unique NDC

numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300

mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone

tablets 7.5 mg (100 units), #49884-725-01.

373. On the basis of Walgreens', Omnicare's, and other pharmacies' reimbursement claim

submissions and compliance representations, the State of Texas regularly reimbursed pharmacies

for sales of defendants' products that had been illegally substituted, including ranitidine capsules,

fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these

products and the resulting reimbursements, knowing that the reimbursement claims were to be made

in accordance with state and federal laws. Walgreens', Omnicare's, and other pharmacies'

reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets,

and buspirone tablets were false and/or fraudulent.

374. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell,

defendants' pharmaceuticals in violation of State pharmacy and Medicaid law. Walgreens,

Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by

defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of

valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products

did not comply with Texas's pharmacy requirement that drugs must be validly prescribed and that

the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*,

Tex. Occ. Code §562.002.

93

375. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the state Medicaid agency, Texas Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

376. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Texas Medicaid provider agreements and individual billing certifications by making claims for payment to the State of Texas for defendants' illegally switched drugs that violated Texas and/or Federal law and omitted material facts.

377. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Texas Medicaid provider agreement and State and Federal law.

378. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the State of Texas, false or fraudulent claims for payment or approval for defendants' products.

379. By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Texas for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

94

380.    By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the State of Texas by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

381.    The false or fraudulent claims to the State of Texas were material.

382.    Plaintiff State of Texas, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

383.    The State of Texas sustained damages because of the defendants' actions.

## COUNT XIX
### Virginia Fraud Against Taxpayers Act

384.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-96 as if fully set forth herein. This Count is brought by Lisitza in the name of the Commonwealth of Virginia under the *qui tam* provisions of the Virginia Fraud Against Taxpayers Act, Va. Code §8.01-216.1 *et seq.*

385.    Defendants, at all times relevant to this action, after the effective date of the Virginia Fraud Against Taxpayers Act (January 1, 2003), sold and continues to sell pharmaceuticals in the Commonwealth of Virginia that were and will be paid for by the commonwealth. Defendants, at all times relevant to this action, sold their pharmaceuticals to Walgreens, Omnicare, and other pharmacies in Virginia for distribution to Virginia residents. Through defendants' sale of certain pharmaceutical products, including ranitidine capsules, fluoxetine tablets, and buspirone tablets, to Walgreens, Omnicare, and other pharmacies in Virginia, Par and the other defendants knowingly caused, and conspired in, the presentation of false claims to Virginia Medicaid.

95

386. In order to be eligible to receive Medicaid reimbursement for defendants' products and other prescription drugs, pharmacies in Virginia must submit an enrollment form and execute an application agreement to obtain a provider number. In agreeing to become a Medicaid provider and receive a unique provider number, pharmacies specifically represent that they will comply with all applicable federal and commonwealth laws and regulations governing Virginia Medicaid.

387. On a daily basis, Walgreens and other Virginia pharmacies batch Medicaid claims and submit them electronically to the commonwealth. As part of each electronic claim, a pharmacy affixes its unique Medicaid provider identification number. In making such reimbursement submissions, Walgreens, Omnicare, and other pharmacies represent to the State: (1) that the submissions comply with all applicable federal and commonwealth laws and regulations, governing the Virginia Medicaid program; (2) that the information submitted is true, accurate and complete; and (3) that there is no concealment or falsification of material facts.

388. By submitting requests for reimbursements, Walgreens, Omnicare, and other pharmacies represent that they are seeking reimbursement for the drug prescribed. On each electronic reimbursement claim to the Commonwealth of Virginia each prescription drug is identified by a unique NDC number. The NDC number reflects the specific manufacturer, dosage form and dosage strength of the drug on the claim form. For example, the following Par products have unique NDC numbers as listed: Ranitidine capsules 150 mg (60 units), #49884-647-02; Ranitidine capsules 300 mg (30 units), #49884-648-11; Fluoxetine tablets 20 mg (30 units), #49884-735-11; and Buspirone tablets 7.5 mg (100 units), #49884-725-01.

389. On the basis of Walgreens, Omnicare's, and other pharmacies' reimbursement claim submissions and compliance representations, the Commonwealth of Virginia regularly reimbursed pharmacies for sales of defendants' products that had been illegally substituted, including ranitidine capsules, fluoxetine tablets, and buspirone tablets. Par and the other defendants profited from sale of these products and the resulting reimbursements, knowing that the reimbursement claims were to be made in accordance with commonwealth and federal laws. Walgreens', Omnicare's, and other pharmacies' reimbursement requests for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets were false and/or fraudulent.

390. Walgreens, Omnicare, and other pharmacies sold, and may continue to sell, defendants' pharmaceuticals in violation of commonwealth pharmacy and Medicaid law. Walgreens, Omnicare, and other pharmacies regularly dispensed improper drugs marketed and manufactured by defendants on the basis of invalid or altered prescriptions or with total disregard for the terms of valid prescriptions. Walgreens, Omnicare, and other pharmacies in dispensing defendants' products did not comply with Virginia's pharmacy requirement that drugs must be validly prescribed and that the same dosage form and strength is necessary for substitution and/or drug equivalency. See *e.g.*, Va. Code §54.1-3401.

391. As a result of the pharmacies' certified claims for payment in their reimbursement submissions to the commonwealth Medicaid agency, Virginia Medicaid routinely made payments to the co-conspirator pharmacies for defendants' illegally switched drugs.

392. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to make false claims and statements in violation of the terms of their Virginia Medicaid provider

agreements and individual billing certifications by making claims for payment to the Commonwealth of Virginia for defendants' illegally switched drugs that violated Virginia and/or Federal law and omitted material facts.

393. Defendants conspired with and caused Walgreens, Omnicare, and other pharmacies to falsely assert compliance with their Virginia Medicaid provider agreement and commonwealth and Federal law.

394. By virtue of the above-described acts, among others, defendants knowingly caused Walgreens, Omnicare, and other pharmacies to submit, and possibly continue to submit, directly or indirectly to officers, employees or agents of the Commonwealth of Virginia, false or fraudulent claims for payment or approval for defendants' products.

395. By virtue of the above-described acts, among others, defendants with and through Walgreens, Omnicare, and other pharmacies knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the Commonwealth of Virginia for false or fraudulent claims for defendants' products including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

396. By virtue of the above-described acts, defendants conspired with Walgreens, Omnicare, and other pharmacies to defraud the Commonwealth of Virginia by submitting false claims and causing the presentation of false claims for defendants' illegally switched drugs including ranitidine capsules, fluoxetine tablets, and buspirone tablets.

397. The false or fraudulent claims to the Commonwealth of Virginia were material.

398. Plaintiff Commonwealth of Virginia, being unaware of the falsity of the claims and/or statements made, or caused to be made, by defendants, and in reliance on the accuracy thereof paid and may continue to pay for illegally-switched prescriptions.

399. The Commonwealth of Virginia sustained damages because of the defendants' actions.

### JURY DEMAND

400. Plaintiffs demand trial by jury on all claims.

### PRAYER

401. WHEREFORE, plaintiffs pray for judgment against defendant as follows:

    a. That defendants be found to have violated and be enjoined from future violations of the federal False Claims Act, 31 U.S.C. §3729-32; the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*; the California False Claims Act, Cal. Gov. Code §12651(a); the Delaware False Claims and Reporting Act, Del. Code Tit. VI. §1201; the District of Columbia False Claims Act, D.C. Code §2-308.13 *et seq.*; the Florida False Claims Act, Fl. Stat. §§68.081-68.09; the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*; the Indiana False Claims Act, Ind. Code §5-11-5.5 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §46:439.1; the Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A) *et seq.*; the Michigan Medicaid False Claims Act, Mich. Comp. Laws §400.601 *et seq.*; the Montana False Claims Act, Mont. Code 17-8-401 *et*

seq.; the Nevada False Claims Act, Nev. Rev. Stat. §357.010 et seq.; the New Hampshire Medicaid Fraud and False Claims Act, N.H. Rev. Stat. §167:61 et seq.; the New Mexico Medicaid False Claims Act, N.M. Stat. §27-14-1 et seq.; the Tennessee Medicaid False Claims Act, Tenn. Code §71-5-181 et seq.; the Texas Medicaid Fraud Prevention Act, Tx. Hum. Res. Code §36.101 et seq.; and the Virginia Fraud Against Taxpayers Act, Va. Code §8.01-216.1 et seq.

b.      That this Court enter judgment against defendants in an amount equal to three times the amount of damages the United States Government has sustained because of defendants' false or fraudulent claims, plus the maximum civil penalty for each violation of 31 U.S.C. §3729.

c.      That plaintiffs be awarded the maximum amount allowed pursuant to §3730(d), and all relief to which they are entitled pursuant to §3730(h) of the False Claims Act.

d.      That this Court enter judgment against defendants in an amount equal to three times the amount of damages the State of Illinois has sustained because of defendants' false or fraudulent claims, plus the maximum civil penalty for each violation of the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175.

e.      That this Court enter judgment against defendant Walgreens in for the maximum amount of damages sustained by each State or District because of

defendants' false or fraudulent claims, plus the maximum civil penalty for each violation of the California False Claims Act, Cal. Gov. Code §12651(a); the Delaware False Claims and Reporting Act, Del. Code Tit. VI. §1201; the District of Columbia False Claims Act, D.C. Code §2-308.03 *et seq.*; the Florida False Claims Act, Fl. Stat. §§68.081-68.09; the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*; the Indiana False Claims Act, Ind. Code §5-11-5.5 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §46:439; the Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A); the Michigan Medicaid False Claims Act, Mich. Comp. Laws §400.601 *et seq.*; the Montana False Claims Act, Mont. Code 17-8-401 *et seq.*; the Nevada False Claims Act, Nev. Rev. Stat. §357.010 *et seq.*; the New Hampshire Medicaid Fraud and False Claims Act, N.H. Rev. Stat. §167:61 *et seq.*; the New Mexico Medicaid False Claims Act, N.M. Stat. §27-14-1 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Stat. §71-5-181 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tx. Hum. Res. Code §36.101 *et seq.*; and the Virginia Fraud Against Taxpayers Act, Va. Code §8.01-216.1 *et seq.*

f.    That plaintiffs be awarded the maximum amount allowed pursuant to 740 ILCS 175/4(d) of the Illinois Whistleblower Reward and Protection Act; the California False Claims Act, Cal. Gov. Code §12651(a); the Delaware False Claims and Reporting Act, Del. Code Tit. VI. §1201; the District of

101

Columbia False Claims Act, D.C. Code §2-308.03 *et seq.*; the Florida False Claims Act, Fl. Stat. §§68.081-68.09; the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*; the Indiana False Claims Act, Ind. Code §5-11-5.5 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §46:439; the Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A); the Michigan Medicaid False Claims Act, Mich. Comp. Laws §400.601 *et seq.*; the Montana False Claims Act, Mont. Code 17-8-401 *et seq.*; the Nevada False Claims Act, Nev. Rev. Stat. §357.010 *et seq.*;the New Hampshire Medicaid Fraud and False Claims Act, N.H. Rev. Stat. §167:61 *et seq.*; the New Mexico Medicaid False Claims Act, N.M. Stat. §27-14-1 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Stat. §71-5-181 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tx. Hum. Res. Code §36.101 *et seq.*; and the Virginia Fraud Against Taxpayers Act, Va. Code §8.01-216.1 *et seq*; and all relief to which they are entitled pursuant to said laws.

g.  That defendants be found to have violated and be enjoined from future violations of the Illinois Insurance Claims Fraud Prevention Act.

h.  That this Court enter judgment against defendants for the maximum amount of damages sustained by Illinois private payors because of defendants' false or fraudulent claims, plus the maximum civil penalty for each violation of the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*

i.  That plaintiffs be awarded the maximum amount allowed pursuant the ICFPA, 740 ILCS 92/25.

j.  That plaintiffs be awarded all costs of this action, including expert witness fees, attorneys' fees, and court costs.

k.  That plaintiffs recover such other relief as the Court deems just and proper.

Respectfully submitted,

UNITED STATES OF AMERICA *ex rel.*
BERNARD LISITZA, STATE OF ILLINOIS *ex rel.* BERNARD LISITZA, STATE OF
CALIFORNIA *ex rel.* BERNARD LISITZA,
STATE OF DELAWARE *ex rel.* BERNARD
LISITZA, DISTRICT OF COLUMBIA *ex rel.*
BERNARD LISITZA, STATE OF FLORIDA *ex rel.* BERNARD LISITZA, STATE OF HAWAII *ex rel.* BERNARD LISITZA, STATE OF INDIANA
*ex rel.* BERNARD LISITZA, STATE OF
LOUISIANA *ex rel.* BERNARD LISITZA,
COMMONWEALTH OF MASSACHUSETTS *ex rel.* BERNARD LISITZA,  STATE OF
MICHIGAN *ex rel.* BERNARD LISITZA, STATE
OF MONTANA *ex rel.* BERNARD LISITZA,
STATE OF NEVADA *ex rel.* BERNARD
LISITZA, STATE OF NEW HAMPSHIRE  *ex rel.*
BERNARD LISITZA, STATE OF NEW MEXICO
*ex rel.* BERNARD LISITZA, STATE OF
TENNESSEE *ex rel.* BERNARD LISITZA,
STATE OF TEXAS *ex rel.* BERNARD LISITZA,
COMMONWEALTH OF VIRGINIA *ex rel.*
BERNARD LISITZA, and BERNARD LISITZA,
individually,

By: _____
        Michael I. Behn

Date:  November 9, 2006

Michael I. Behn
Linda Wyetzner
BEHN & WYETZNER, CHARTERED
55 W. Wacker Drive, Suite 950
Chicago, Illinois 60601
Phone:  312-629-0000
Facsimile: 312-327-0266
ARDC No. 6209610