```
 1   TRANSCRIBED FROM DIGITAL RECORDING

 2                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 3                        EASTERN DIVISION

 4   UNITED STATES OF AMERICA ex rel.,     )
     Bernard Lisitza, et al.,              )
 5                                         )
              Plaintiffs,                  )
 6                                         )
              vs.                          ) No. 06 C 6131
 7                                         )
     PAR PHARMACEUTICAL COMPANIES, INC.,   )
 8   et al.,                               ) Chicago, Illinois
                                           ) May 16, 2012
 9            Defendants.                  ) 9:20 A.M.

10             TRANSCRIPT OF PROCEEDINGS - Hearing
       BEFORE THE HONORABLE ARLANDER KEYS, Magistrate Judge
11
     APPEARANCES:
12
     For the Government:       HON. PATRICK J. FITZGERALD
13                             219 South Dearborn Street
                               Chicago, Illinois  60604
14                             BY:  MS. LINDA A. WAWZENSKI

15   For the Relator:          BEHN & WYETZNER, CHARTERED
                               500 North Michigan Avenue
16                             Suite 850
                               Chicago, Illinois  60611
17                             BY:  MR. MICHAEL I. BEHN

18   For Michigan:             ATTORNEY GENERAL FOR THE
                                 STATE OF MICHIGAN
19                             2860 Eyde Parkway
                               East Lansing, Michigan  48823
20                             BY:  MS. ELIZABETH VALENTINE
                                    (Appearing telephonically)
21
                      PAMELA S. WARREN, CSR, RPR
22                       Official Court Reporter
                219 South Dearborn Street, Room 1928
23                     Chicago, Illinois  60604
                            (312) 294-8907
24
     NOTE:  Please notify of correct speaker identification.
25   FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
     UNINTELLIGIBLE.
```

1    **APPEARANCES:  Continued**

2    For Defendant Par:          MR. RICHARD J. PRENDERGAST
                                 111 West Washington Street
3                                Suite 1100
                                 Chicago, Illinois  60602
4
                                 WILLIAMS & CONNOLLY LLP
5                                725 Twelfth Street, N.W.
                                 Washington, DC  20005
6                                BY:  MS. JULIANNE C. JOHNSTON
                                      MR. PAUL K. DUEFFERT
7
     For Defendants Alphapharm   SWANSON, MARTIN & BELL, LLP
8    and Genpharm:               330 North Wabash
                                 Suite 3300
9                                Chicago, Illinois  60611
                                 BY:  MR. ANTHONY D. DANHELKA
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       (Proceedings held in open court:)
2              THE CLERK:  06 C 6131, United States of America, ex
3  rel Bernard Lisitza versus Par Pharmaceuticals.
4       (Discussion off the record.)
5              THE COURT:  Okay.  We'll take this case.
6              State your appearances, counsel.
7              MR. BEHN:  Good morning, your Honor.  Michael Behn for
8  the relator.
9              MS. WAWZENSKI:  Good morning, your Honor.  Linda
10 Wawzenski for the United States.
11             THE COURT:  Good morning, Ms. Wawzenski.
12             MS. JOHNSTON:  Good morning, your Honor.  Julianne
13 Johnston for Par Pharmaceutical Companies, Inc.
14             THE COURT:  Good morning, Ms. Johnston.
15             MR. DANHELKA:  Good morning, your Honor.  Anthony
16 Danhelka for Alphapharm and Genpharm ULC.
17             THE COURT:  Good morning.
18             MR. PRENDERGAST:  Good morning, your Honor.  Richard
19 Prendergast for Par.
20             THE COURT:  Good morning.
21             MR. DUEFFERT:  Good morning, your Honor.  Paul
22 Dueffert for Par.
23             THE COURT:  Good morning.
24             Alicia, are you supposed to get Ms. Elizabeth --
25             THE CLERK:  Ms. Valentine?

```
 1              THE COURT:  Yes.
 2              THE CLERK:  Attorney General?
 3              THE COURT:  She's appearing from Michigan by phone.
 4              THE CLERK:  Yes.
 5         (Brief interruption.)
 6              THE COURT:  Do you believe we can't dial by computer?
 7         (Laughter.)
 8              MS. VALENTINE:  Good morning.
 9              THE CLERK:  Good morning.  This is the courtroom of
10    Judge Arlander Keys in Chicago.
11              MS. VALENTINE:  Yes.
12              MS. VALENTINE:  Assistant Attorney General
13    Ms. Valentine?
14              MS. VALENTINE:  Speaking.
15              THE COURT:  Okay.  Ms. Valentine, good morning.  We
16    have all the other parties represented here.  And we have a
17    motion to compel the plaintiffs's Rule 26(a) disclosure.
18    Basically it is asking for supplemental disclosures to the
19    original disclosures that were made by several of the
20    defendants in this case.
21              And we have --
22              MS. VALENTINE:  Good morning, and thank you for
23    letting me appear by conference call.
24              THE COURT:  Good morning.
25              I did review some of the answers to the
```

```
 1   (unintelligible) disclosures and --
 2        (Background noise.)
 3            THE COURT:  -- they are (unintelligible) short.  And I
 4   think the plaintiffs, with regard to those individuals, those
 5   other agencies, that they are entitled to the names of people
 6   who were involved.
 7            Right?  That's what you are asking for?
 8            MS. WAWZENSKI:  Well, your Honor, with regard to the
 9   names of people that they have asked for, the primary focus
10   on --
11            MS. VALENTINE:  I'm sorry, I can't hear you.
12            MS. WAWZENSKI:  The primary focus of the names that
13   they are --
14            THE COURT:  Can you hear now?
15            MS. VALENTINE:  Now I can hear.
16            THE COURT:  Turn it all the way up, Alicia.
17            All right.
18            MS. WAWZENSKI:  The primary focus of the names that
19   they are asking for are individuals from the 50 states that
20   would have knowledge about particular Medicaid programs.  But
21   the key for me with regard to Rule 26 is we are required to
22   present to the other side names of individuals on who we might
23   rely for our case in chief.
24            And I'll tell the Court that we do not, the United
25   States does not intend to rely on 50 witnesses from 50 states
```

```
 1   to testify about Medicaid procedures in those individual
 2   states.  And that's why we have not identified anyone in our
 3   Rule 26 disclosures.
 4           We were asked specifically by the rule to tell them
 5   who we're going to rely on and who we believe, at the beginning
 6   of the case, we are going to rely on.  And I'll say to the
 7   Court there is no way we're going to bring 50 witnesses to
 8   testify before Judge Gottschall in this case.
 9           THE COURT:  Well, it is -- in each case though there
10   is some individual whistle blower, for lack of a better word,
11   make disclosures to the plaintiffs that resulted in them
12   bringing this lawsuit.
13           MS. WAWZENSKI:  The one whistle blower, who is a party
14   to the case, Mr. Lisitza, that's the only whistle blower that
15   there is in the case.
16           THE COURT:  Counsel?
17           MR. BEHN:  Yes, your Honor.  I mean, essentially what
18   the defendants, in our view, are asking for is the names of
19   perhaps the heads of the Medicaid agencies.
20           As Ms. Wawzenski has pointed out, there is no
21   particular person who we're relying on at this point for that
22   kind of evidence.  They are asking in terms of who knows the
23   procedures as far as Medicaid.  One, we're not relying on, so
24   common sense, we're not required by 26 to do that.  But in
25   terms of just the common sense approach --
```

1           MS. VALENTINE:  My connection is cutting out.
2           MR. BEHN:  -- there is -- they are asking for the
3    names of either the heads of the agencies or everyone in the
4    agency or anyone in the agency who knows this sort of thing.
5    And that will be sorted out, if they want to propound 30(b)(6)
6    as the typical way, in my experience, that is handled in these
7    kind of cases.
8           THE COURT:  Okay.  Mr. Prendergast, this is your
9    motion, right?
10          MR. DUEFFERT:  It is our motion.
11          MS. JOHNSTON:  It is our motion, your Honor.  Par's
12   motion.
13          THE COURT:  Okay.  So --
14          MS. JOHNSTON:  So, yes.
15          THE COURT:  All right.
16          MR. DUEFFERT:  It is all of our motion.
17          MS. JOHNSTON:  Yes.
18          THE COURT:  All right.  So what is your response to
19   that?  I mean, they are saying they are not going to be relying
20   on any particular individual that they can actually say, the
21   secretary to a particular individual is the one that we are
22   going to be relying on.  Normally that's what -- in a 26(a)
23   disclosure that's what they would be doing if they knew.
24          Now what is your response?  How can they be more
25   specific than what they are (unintelligible)?

1        MS. JOHNSTON:  Your Honor, their complaint alleges
2   that Par induced pharmacies to submit claims, false claims to
3   Medicaid agencies.  There was someone at Medicaid processing
4   the claims, perhaps through electronic means as their complaint
5   alleges, who in Medicaid was -- knows about the processing of
6   those claims, who knows about the payment of those claims, who
7   knows about the setting of the reimbursement rates.  Part of
8   their complaint is founded on the variance in the reimbursement
9   rates for certain formulations of three different drugs.  So
10  who at these Medicaid agencies were setting the rates, the
11  maximum rates, at which these drugs were reimbursed.  And these
12  are all allegations in their complaint.
13       But there aren't any persons, in their initial
14  disclosures, that could speak to any of these allegations in
15  their complaint.
16       THE COURT:  And you would possibly want to depose
17  these people, I take it --
18       MS. JOHNSTON:  Ab- --
19       THE COURT:  -- that's why you would --
20       MS. JOHNSTON:  Absolutely, your Honor.  We're trying
21  to get discovery moving at this point.
22       In other cases involving Medicaid agencies that we
23  have been involved in, we would expect there to be a general
24  head of the pharmaceutical reimbursement program that's been
25  around for several years, we have seen in some of these states,

1  who would be quite knowledgeable about these -- about these
2  items.
3       We'd also expect there to be a lieutenant to that
4  person who handles the specific reimbursement rates for generic
5  drugs in setting those maximum rates that the complaint speaks
6  of.  We'd expect there to be someone like that.
7       We'd also expect there to be someone who handles the
8  claims processing and can speak to how each state handled the
9  processing of these allegedly false claims to the state.
10       So those are three categories that we think would be
11  there, but we would -- we need those names to get moving on
12  discovery at this point.  And we expect those to be part of the
13  initial disclosures given the allegations in the complaint.
14       THE COURT:  (Unintelligible) either you or
15  Ms. Wawzenski, go on.
16       MR. BEHN:  Your Honor, counsel has just described
17  hundreds, if not thousands, of individuals within the Medicaid
18  agencies.  And a better way to resolve this, if there are
19  specific topics they want to depose on by specific agencies,
20  they can issue Rule 30(b)(6)s.
21       MS. WAWZENSKI:  Your Honor, and the other point here
22  is that the setting of the prices, which is the federal local
23  limit, and then the (unintelligible), which is a Medicaid upper
24  limit for these drugs, is statutorily set.  So having
25  individuals to testify about what the statute says is somewhat

1  useless as far as I'm concerned.
2        The other thing to remember is that when we're talking
3  about the processing of these claims, this is all done
4  electronically.  When you bring a prescription into Walgreen's,
5  they put it into the system, they put your insurance
6  information into the system, electronically that claim is
7  paid.  This is not done by a person who reviews a document.
8  And it is all done electronically all over the country.
9        So trying to have people testify about how the
10 electronic system is done -- we're not alleging that there was
11 anything improper with how the claims were submitted in the
12 sense of getting them paid.  What we're saying is that the drug
13 was switched to a type of drug that should not have been
14 prescribed.  That the system of reimbursement itself is not at
15 issue, and we're not claiming that there was any problem with
16 how the claims themselves were submitted or paid.  It is just
17 that the switch was made, and, therefore, Medicaid programs
18 paid more for the drugs than they should have paid for the
19 drugs.
20       And, again, as counsel for the relator has said, if
21 they have specific places and states in which they want to
22 ferret out particular information, they can certainly do so.
23 But, again, in preparing our complaint and investigating the
24 allegations that were made by the whistle blower, we do not
25 interview individuals from the 50 state Medicaid programs.  We

1   did not rely on individuals from any of the 50 state Medicaid
2   programs.
3           So for Rule 26 purposes, we are not going to rely on
4   those people and, therefore, we should not have the obligation
5   to produce that information.
6           THE COURT:  Well, I mean, why can't you folks rely on
7   serving 30(b)(6) on -- as counsel has suggested, rather than
8   wholesale, as Ms. Wawzenski has said, they didn't rely on any
9   specific individuals in each of the states?
10          MS. JOHNSTON:  Your Honor, we'd expect the --
11          THE COURT:  Once you get the answer to the 30(b)(6)
12  inquiries, then you might have the name of the individuals.
13  Maybe.
14          MS. JOHNSTON:  Maybe.  Or we might be back then.
15          Your Honor, at this point we're trying to get
16  discovery going as -- it does involve 50 states.  This is going
17  to be a big undertaking.  And given the allegations in the
18  complaint, we would expect the plaintiffs to know the
19  individuals in the Medicaid agencies.  Their common law fraud
20  counts in the complaint, that requires reliance.  Who at these
21  agencies would speak to reliance?
22          These -- we wouldn't expect this to be a large
23  undertaking given the allegations that would enable us to focus
24  our discovery, focus our discovery requests, our
25  interrogatories, our document requests that we would issue

1  before we issued -- or hope to issue before we issue 30(b)(6)
2  notices.  And having these names would allow us to figure out
3  who during this time period at these agencies was responsible
4  for these items.
5        And some of these things, in our experience, aren't
6  set by statute or regulation.  For example, the maximum
7  allowable cost rates are often handled by a person in
8  Medicaid.  And we have spoken with those people in other cases,
9  and so it is not entirely statutorily created.  There are
10 people in these agencies who speak -- speak to these matters
11 alleged in the complaint.  And we would expect those people to
12 be readily identifiable by plaintiffs given the complaint and
13 their allegations that -- that involves these agencies.
14        THE COURT:  Ms. Valentine.  You're on the phone.
15 You're the only on the phone.  Did you have any response to
16 that?
17        MS. VALENTINE:  I do, your Honor.  This is Elizabeth
18 Valentine in Michigan.  Michigan even has, as part of its
19 Medicaid False Claims Statute, a provision that says if
20 you -- if a claim is submitted that the agency -- is a
21 rebuttable presumption that the agency is entitled to
22 justifiably rely on the accuracy of that information.
23        Also, by certification we can bring in all the data
24 showing what was paid on the claim, what was submitted to be
25 paid for the claim, what the actual reimbursement amount was

1  without calling in individual witnesses.  That's part of our
2  statute because it is so burdensome.
3         There is no one person, for instance, who actually
4  processes these paid claims.  The max prices, the maximum
5  allowable cost prices, those are set and input into the billing
6  system and automatically determine what price is going to be on
7  a particular claim.
8         There is really no point in fishing around in the
9  agency and deposing 20, 25 people about their role in how a
10 Medicaid claim is paid because in fact these are, as when they
11 are mentioned, electronic claims that are almost automatically
12 paid.  And we're entitled to rely on the accuracy of those
13 claims as a matter of law.
14        And we think that there is really -- the only person I
15 would envision calling to submit the data on what was actually
16 paid for these claims is a document custodian or a person who
17 signs the certification saying that these are accurate coming
18 out of the billing system.
19        THE COURT:  All right.  I think (unintelligible)
20 explanation.  Normally this is the kind of information,
21 specific information, that -- in a normal case that you would
22 be entitled to.  So you would decide who you wanted to take
23 depositions of or who you wanted to eliminate from that
24 process, but -- and based on the -- on the explanation that has
25 been given by Ms. Valentine, as well as by Ms. Wawzenski, as to

1  these individuals, they are not -- apparently not relying on
2  specific individuals.
3       To the extent that they are, you should be able to
4  ferret this out through the 30(b)(6) process. And then after
5  you have -- if you have -- you believe after getting the
6  answers to the 30(b)(6) inquiries, and you could then -- not
7  satisfied with it, then you would have a basis for compelling
8  answers, more specific answers.
9       MS. JOHNSTON: And, your Honor, we assume this
10 wouldn't foreclose our seeking this information in
11 interrogatories as well.
12      THE COURT: No. Exactly. I'm going -- I'm not going
13 to -- what I am going to do is deny your motion at this time
14 without prejudice to renewing it after you have engaged in
15 further discovery, both either by interrogatories or 30(b)(6)
16 witnesses. So I'm denying it for now but without prejudice.
17      MS. JOHNSTON: Thank you, your Honor.
18      THE COURT: You're welcome.
19      MS. WAWZENSKI: Thank you, your Honor.
20      THE COURT: Do we have another status in this case?
21      MS. WAWZENSKI: We don't. This was a status date that
22 the Court set --
23      THE COURT: All right.
24      MS. WAWZENSKI: -- sixty days ago in the hopes that
25 we'd --

```
 1              THE COURT:  Let's set --
 2              MS. WAWZENSKI:  -- come back with good news of
 3   settlements.
 4              THE COURT:  And what -- do you have any good news?
 5              MS. WAWZENSKI:  It falls on Mr. Dueffert's
 6   (unintelligible) on that.
 7              MR. DUEFFERT:  We are (unintelligible) plaintiff
 8   turned (unintelligible) proposal so we are (unintelligible).
 9              THE COURT:  All right.  We'll put it down for another
10   60 days.
11              MS. WAWZENSKI:  Thank you, your Honor.
12              MS. JOHNSTON:  Thank you.
13              THE COURT:  Sixty-day next status, Alicia.
14              So that motion is denied without prejudice.  All
15   right?
16              MR. DUEFFERT:  Thank you.
17              THE COURT:  You're welcome.
18              THE CLERK:  Friday, July 20th at 9:00.
19              MR. BEHN:  I will be out of town.
20              THE COURT:  Okay.  Alicia, another date.
21              THE CLERK:  Monday, July 23rd at 9:00.
22              THE COURT:  July 23rd, I believe that's the conference
23   we have in Denver.
24              MR. BEHN:  I'll be back the following week.
25              THE CLERK:  July 30th, Monday.
```

1  MR. BEHN: Yeah.
2  THE COURT: Okay. July 30th, next status.
3  MS. WAWZENSKI: Thank you, your Honor.
4  MS. JOHNSTON: Thank you, your Honor.
5  MR. DANHELKA: Thank you, your Honor.
6  (Which concluded the proceedings in the above-entitled
7  matter.)
8  CERTIFICATE
9  I HEREBY CERTIFY that the foregoing is a true, correct
10 and complete transcript of the proceedings had at the hearing
11 of the aforementioned cause on the day and date hereof.
12
13 */s/Pamela S. Warren*                       June 6, 2012
   Official Court Reporter                    Date
14 United States District Court
   Northern District of Illinois
15 Eastern Division
16
17
18
19
20
21
22
23
24
25