IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 06 C 6131 |
| *ex rel.* | ) | |
| BERNARD LISITZA, *et al.* | ) | |
| | ) | |
|     Plaintiffs, | ) | Judge John Tharp, Jr. |
| | ) | |
|     v. | ) | Magistrate Judge Arlander Keys |
| | ) | |
| PAR PHARMACEUTICAL COMPANIES, | ) | |
| INC., *et al.* | ) | |
| | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this case, the United States of America through the Relator Bernard Lisitza ("Relator") sued Par Pharmaceutical Companies Inc. ("Par") for violation of the federal False Claims Act, 31 U.S.C. §§3729-32, and parallel state statutes. Currently, there are several motions pending before this Court: Par's motion to compel the USA's response to interrogatories [#240], Par's motion to compel the Relator's response to interrogatories [#245], as well as the State of Texas' motion for a protective order to prevent Par from obtaining investigative work product of the Texas Attorney General ("Texas AG") [#259]. For the reasons set forth below, the motions to compel [#240 and 245] are granted in part and denied in part, and the motion for a protective order [#259] is denied.

1

**Background & Procedural History**

On November 9, 2006, the Relator filed a complaint alleging that Par engaged in an unlawful scheme to induce Medicaid provider pharmacies to switch the dosage form of certain medications in order to increase state Medicaid reimbursement. Specifically, the Relator alleges that Par manufactured and marketed three drugs -ranitidine, fluoxetine, and buspirone- in non-traditional dosage forms in order to opportunistically exploit certain provisions of the federal regulations, thereby violating the federal False Claims Act and analogous state statues.

In response to Plaintiffs suit, Par served its first set of interrogatories and its first document requests on May 23, 2012 and its second set of interrogatories on June 28, 2013. The parties held a final meet and confer on August 27, 2013 in order to address issues raised by the Plaintiffs' objections to the second set of interrogatories, as well as issues outstanding from the first. Although many of the issues have been resolved, the parties are unable to reach agreement on several of Par's requests.

Lastly, before the Court is non-party state of Texas' motion for a protective order to prevent Par from obtaining the "investigative work product" of the Texas AG. Texas argues that

2

the Texas AG began a confidential investigation pursuant to the Texas Medicaid Fraud Prevention Act, and was appointed a member of the National Association of Medicaid Fraud Control Units ("NAMFCU") to help investigate and resolve matters in the instant case.  A Texas Medicaid Fraud Control Unit Data Analyst, Dana McCoy ("Ms. McCoy"), was appointed lead analyst, and produced a 50-state damages analysis, referred to herein as the "Damages Investigative Work Product."  The State of Texas argues that the Damages Investigative Work Product is statutorily protected from discovery and disclosure, and requests that the Court enter a protective order barring it from Defendants' use.

## Standard of Review

The district court exercises significant discretion in ruling on a motion to compel.  The district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case.  Fed. R. Civ. P. 37(a)(4)(B), (c).  Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties.  *See*, *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).  Courts have

discretion to limit the extent of discovery after considering "[if] the burden or expense of the proposed discovery outweighs its likely benefit...the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(c)(iii).

Where the party from whom the documents are requested objects to the request, the party seeking the request may move for an order to compel production. *Gile v. United Airlines, Inc.*, 95 F.3d 496. "A party objecting to the production of relevant information on the ground that it is unduly burdensome has the burden to prove the extent of that burden." *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP,* No. 12 C 1446, 2013 WL 505252, at *3 (N.D. Ill. Feb. 12, 2013). The Seventh Circuit, however, has often warned that "discovery is not to be used as a fishing expedition." *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971–972 (7th Cir. 1996). *Accord Brenneman v. Knight*, 297 Fed.Appx. 534, 538, 2008 WL 4748516, 2 (7th Cir. 2008) ("But requiring the staff to conduct a fishing expedition, particularly of the magnitude Brenneman requested, would have imposed too great a burden.")

Rule 26 provides that the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including

4

"forbidding the disclosure of discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). Additionally, the Court may give weight to "the fact of [Texas'] nonparty status... in weighing the burdens imposed in the circumstances." *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422 (Fed. Cir. 1993).

## Discussion

Par requests that the Court order Plaintiffs, Unites States and Relator, to provide full and complete responses to all of its interrogatories and requests for production of documents. Par argues that its discovery requests seek "the most basic of information regarding the United States' allegations in this case." Par's Mot. at 3 [Dkt. #240]. With regard to the Relator, Par argues that its interrogatories only seek "basic information regarding the Relator's core allegation." Par's Mot. at 3, [Dkt. #245]. The Court will address each outstanding request in turn.

I. Par's First Request for Production of Documents to Plaintiff United States of America

*a. Document Request No. 2*

Here Par requests "[a] copy of each false claim at issue in this lawsuit that [the United States'] contend[s] was

5

presented to [it]."  Par's Ex. 2, at 5.  Par argues that, rather than produce a copy of each Medicaid claim that it alleges to be false, the United States, instead, produced electronic claims data that covers "the entire time period as alleged in the complaint for all states and NDCs at issue."  Par's Ex. 6, at 2.

Plaintiff contends that the false claims in its possession are not actual pieces of paper, instead the vast majority of claims submitted by providers on behalf of beneficiaries are electronic.  Plaintiff maintains that all of the electronic claim data has been produced by the United States for both Walgreens and Omnicare – the only providers for which Plaintiff is seeking damages.  With regard to Par's request of Plaintiff to identify which of these claims were false, it is Plaintiff's opinion that "every claim submitted as a result of the switching scheme, is false."

Rule 34 requires only that a party produce electronically stored information in the form "in which it is ordinarily maintained." Fed. R. Civ. P. 34(b)(2)(E)(ii). Accordingly, the court denies Par's motion to compel Document Request No. 2.

*b. Document Request No. 10*

Document Request No. 10 *seeks* "[a]ll charts, lists or any other document itemizing false claims allegedly induced by Par, including but not limited to documents similar to Exhibit 10 to Relator's Complaint." Par's Ex. 2, at 6. In support of its complaint, the United States provided a one-page chart that itemized certain false claims at issue in this case, and Par now asks Plaintiff to turn over anything similar. Plaintiff posits several arguments against the production of any charts/lists such as that of Exhibit 10, including that they were prepared under the auspices of the NAMFCU and are privileged, that they are protected by the work product doctrine, that they are in the control of the respective lead state (Texas) who compiled them in preparation for settlement, and are protected by Rule 408.

Par contends that the requested chart(s) are factual, non-opinion work product, which is obtainable by an adversary if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); *See Fields v. City of Chicago*, No. 10 C 1168, 2012 WL 6705419, at *3 (N.D. Ill. Dec. 26, 2012). Moreover, Par argues that Plaintiffs' inclusion of one such chart as an attachment to the Relator's complaint constitutes waiver, as it was shared with adversaries.

7

Although the Court does not agree with the waiver argument, it does find that such computative, non-opinion, data is not protected by any privilege. Moreover, the Court finds Plaintiffs argument that Par can rely on the electronic claim submission data (CMS MAX RX), which has already been produced to Par, unavailing. Plaintiffs are not solely relying on that data, and Par has a substantial need for such input data in order to effectively investigate the claims and defend itself. The Court finds that Par cannot personally obtain such information without undue hardship. To the extent that opinion or damages analysis is intermingled with the data, the Court does not see why Plaintiffs cannot redact those portions, leaving the factual input for review. Accordingly, the Court orders Plaintiff to comply with Document Request No. 10.

*II. Par's First Set of Interrogatories to Plaintiff United States of America*

*a. Interrogatory No. 1*

Here, Par asks the United States "when and how did [it] first learn of [its] claim against Par[.]" Par's Ex. 1, at 6. The United States response was that it was during the timeframe of the investigations of the allegations in the suits filed against CVS, Omnicare, and Walgreens. Par's argument that a timeframe is necessary, especially so that Par may know what role the Relator played, is unavailing. As Plaintiff suggests,

the deposition of the Relator would be a much better source for such inquiry. The Court finds that Plaintiff adequately addressed this point. Accordingly, the court denies Par's motion to compel Interrogatory No. 1.

*b. Interrogatory No. 3*

Par requests Plaintiff to "[i]dentify all communications between [it] and employees of any state government regarding the setting of MACs for any of the Subject Drugs during the period 2000-2007." Par's Ex. 1, at 6. The United States avers that insofar as the Centers for Medicare and Medicaid Services ("CMS") had any correspondence relating to MAC, it has been produced. Otherwise, Plaintiff argues, correspondence relating to the setting of any MAC is not relevant to this case, and that this is not the appropriate forum to contest any states' MAC setting methodology. The Court agrees, and finds Plaintiff's response sufficient. Accordingly, the court denies Par's motion to compel Interrogatory No. 3.

*c. Interrogatory No. 4*

Par asks the United States to "identify each FUL [Federal Upper Limits] and the period of time over which the FUL existed" and to "explain in detail how each such FUL was set and the reason for the timing of when each such FUL was set." Par's Ex. 1, at 6. Much like Interrogatory No. 3, the United States has produced and provided Par with documents, as well as directed

9

them to the web-based information.  Anything regarding how each FUL is set is not applicable here.  Accordingly, the court denies Par's motion to compel Interrogatory No. 4.

*d. Interrogatory No. 11*

Par seeks to know the specific misrepresentations that the United States alleged Par made in Paragraph 150 of its corrected complaint.  Plaintiff clarifies that it "never contended that Par itself made misrepresentations, but rather that it caused certain pharmacies to make false representations in order to have claims paid by Medicaid."  U.S.' Resp. at 8.  The Court finds that the government's response to this interrogatory sufficiently sets out the alleged conduct of Par, as well as the misrepresentations allegedly induced by Par.  Accordingly, the Court denies Par's motion to compel Interrogatory No. 11.

*e. Interrogatories Nos. 13, 14, and 15*

Through these Interrogatories, Par seeks identification, via Bates number, of the false claims at issue in this case, and Interrogatory No. 15 seeks identification "by 'Dispensed Date,' 'Script Number,' 'Pharmacy Location', etc.  As the Court found with regard to Interrogatory No. 2, so it finds with regard to these three interrogatories.  Accordingly, the Court denies Par's motion to compel Interrogatories Nos. 13, 14, and 15.

*III. Par's Second Set of Interrogatories to Plaintiff United States of America*

*a. Interrogatory No. 1*

Par asks the United States to identify "each state for which [it is] seeking federal share damages." Par's Ex. 9, at 5. Although Plaintiff may not have been as clear as Par would have liked originally, with regard to the information shared on the Omnicare-related states, the Court finds that the United States has now made all such information clear to Par. Accordingly, the court denies Par's motion to compel Interrogatory No. 1.

*b. Interrogatories Nos. 2 and 3*

Through these two Interrogatories, Par seeks identification of, and citation for, each express or implied certification that the United States contends provides the basis for its allegations that Par violated the False Claims Act. Par's Ex. 9, at 5. Par argues that it must know the certifications that form the basis of the United States' complaint in order to focus its fact discovery efforts. Plaintiff argues that the False Claims Act has no language relating to either "express" or "implied" certifications, and that the statute does not reference "certifications," instead it speaks of false claims made or caused to be made for payment. Plaintiff maintains that it has already described to Par what the government contends is false, and that it is disingenuous for Par to claim it is

11

unaware. The Court finds that Plaintiff has, to the best of its ability, described to Par the false claims made and/or caused to be made for payment. Accordingly, the Court denies Par's motion to compel Interrogatories Nos. 2 and 3.

*c. Interrogatory No. 4*

Here Par requests the MAC rates for each drug, and for every state for which the United States seeks federal share damages. The Court agrees with Par that such information is clearly relevant and should be produced. However, the government clarifies that it does not have such information in its possession, custody, or control, as there is no reporting requirement, and states do not voluntarily provide such information which CMS does not seek. The government has produced everything that CMS has provided on this issue, accordingly, Par's motion to compel Interrogatory No. 4 is denied.

*IV. Par's First Set of Interrogatories to Relator*

*a. Interrogatory No. 1*

Par asks the Relator "[w]hen and how did you first learn of your claim against Par?" The Relator responded with initial objections, and then a response addressing the *when*, but not much detail was provided as to the *how*. Moreover, Par felt that the response incorporated prejudicial information, which was irrelevant to the question and could lead to the statement being

unusable in front of a jury. The Court agrees. However, the Relator's amended response included in its opposition to Par's motion to compel seems to make up for its original deficiencies. Relator's Opp. Mot. at 3-4. Accordingly, the Court finds that the Relator has now responded to the best of his knowledge, therefore, no further response to Par's motion to compel Interrogatory No. 1 is required.

*b. Interrogatory No. 4*

Here Par asks the Relator to identify the other pharmacies –aside from Walgreens and Omnicare- for which he is claiming damages; describe Par's wrongful conduct with respect to each such pharmacy; and identify documents in support of the allegation. The Relator initially responded that damages are claimed for all pharmacies that dispensed the Par drugs at issue, specifically listed eighteen pharmacies that "may" be involved, and explained that, as the investigation is ongoing, the response will be supplemented as information becomes available. However, the Relator, through his opposition motion, has now amended and supplemented his answer to a degree found sufficient by the Court. Accordingly, no further response to Par's motion to compel Interrogatory No. 4 is required.

*c. Interrogatory Nos. 7 and 9*

Through these two interrogatories, Par asks the Relator to identify documentation for each false claim and to identify all

claims for reimbursements at issue in this lawsuit. Relator claims to have produced all such documentation in his control responsive to these two requests, which amounts to "several hundreds of thousands of Medicaid claims and reimbursement records." Relator's Opp. Mot. at 7. However, the Relator admits that it has withheld documents containing damages calculations and data summaries that it was provided with under the auspices of the NAMFCU, and that it defers to the arguments of the State of Texas as set forth in its Motion for Protective Order. For the reasons explained by the Court *supra,* regarding Par's Document Request No. 10, and for reasons explained *infra*, regarding Texas' motion for a protective order, the Court grants Par's motion to compel the full and complete response and production of Interrogatory Nos. 7 and 9.

*d. Interrogatory No. 11*

Here Par asks the Relator to identify all persons with personal knowledge regarding the materiality and reliance alleged in several paragraphs of Relator's complaint. Relator responded with the names of 31 fact witnesses with respect to materiality and reliance, none of which, however, were employed by the plaintiff state Medicaid agencies or CMS, as Par presumed they would be. The Court finds that the Relator fulfilled Par's request, as the Seventh Circuit has rejected the need for a showing of government employees under the False Claims Act. See

United States v. Rogan, 517 F.3d 449, 452-53 (7th Cir. 2008). Accordingly, no further response to Par's motion to compel Interrogatory No. 11 is required.

*V. Par's Second Set of Interrogatories to Relator*

*a. Interrogatory No. 1*

Here Par asks Relator to identify each state in which he is seeking damages. The Court agrees with Par, the Relator's initial response was less than straightforward; however Relator's amended response makes clear that it is seeking federal damages for "every state and the District of Columbia," and also expressly names each state that it is seeking state damages. The Court finds that the Relator has now sufficiently responded to Par's interrogatory. Accordingly, no further response to Par's motion to compel Interrogatory No. 1 is required.

*b. Interrogatory Nos. 2 and 3*

Through these interrogatories, Par seeks identification of, and citation for, each express or implied false certification that the Relator contends provided the basis of his allegations that Par violated the Federal False Claims Act and analogous state statutes. Identical to the Court's finding with regard to Par's parallel motion to compel the United Sates on Interrogatories Nos. 2 and 3, *supra*, the Court finds that the Relator, to the best of his ability, described to Par the false

15

claims made and/or caused to be made for payment and provided Par with all certifications in his possession. Accordingly, the Court denies Par's motion to compel Interrogatories Nos. 2 and 3.

*c. Interrogatory No. 4*

Through this interrogatory, Par asks Relator to identify the Medicaid reimbursement ceilings for all strengths and dosage forms of buspirone, fluoxetine, and ranitidine from January 1, 1998 to the present. Relator maintains that he has provided Par with all responsive documentation in his control, including documents "regarding the setting and implementation of…FULs and documentation regarding…MACs." Relator's Opp. Mot, at 10. In the same vein as the Court's finding with regard to Par's motion to compel the United States on Interrogatory No. 3, the Court finds here that the Relator has responded adequately and that no further response is necessary. Accordingly, the court denies Par's motion to compel Interrogatory No. 4.

*VI. Non-Party State of Texas' Motion for Protective order*

Lastly, before the Court is non-party state of Texas' motion for a protective order to prevent Par from obtaining the "investigative work product" of the Texas AG. Texas argues that, after being served with the Relator's *qui tam* action, the Texas AG began a confidential investigation pursuant to the Texas Medicaid Fraud Prevention Act. On August 21, 2009, the

State of Texas was appointed a member of the National Association of Medicaid Fraud Control Units ("NAMFCU") to help investigate and resolve matters in the instant case, and the parties entered into a Common Interest Agreement with Relator's counsel on December 13, 2009 in an effort to coordinate the investigation and prosecution of the Relator's allegations. *See* Texas' Mot., at 2.

In late 2009, Texas was tasked by the NAMFCU team with developing a 50-state damages analysis for use in then-upcoming settlement negotiations. Texas Medicaid Fraud Control Unit Data Analyst, Ms. McCoy, was appointed lead analyst for the NAMFCU Par Team, and was primarily responsible for developing the 50-state damages analysis, including without limitation compiling and synthesizing the underlying state utilization data. *See* McCoy Aff. at ¶ 6. Ms. McCoy submitted national data requests to all state MFCUs for utilization summaries concerning the National Drug Codes (NDCs) of three drugs manufactured and marketed by Par: ranitidine, fluoxetine, and buspirone. *Id.* at ¶ 9. Ms. McCoy was able to compile utilization summaries from all 50 states and the District of Columbia in spreadsheets which were then used to formulate damages estimates. *Id.* at ¶ 9-11. The resultant 50-state analysis is referred to herein as the "Damages Investigative Work Product."

The State of Texas argues that the Damages Investigative Work Product is statutorily privileged and protected from discovery and disclosure under applicable Texas state law, a privilege Texas feels the Court should also apply here by virtue of Federal Rule of Evidence 501 and associated principles of comity. Moreover, Texas argues that the Damages Investigative Work Product was compiled and generated specifically in anticipation of litigation and it incorporates certain legal assumptions and conclusions of the NAMFCU team and the Texas AG regarding the extent of Par's liability and the amount of monetary harm attributable to Par. Texas argues that the Damages Investigative Work Product should, therefore, also be protected from discovery as work product materials pursuant to Rule 26(b)(3). Lastly, Texas claims that the Damages Investigative Work Product was compiled and developed in furtherance of settlement talks with Par, and thus falls within the scope of Federal Rule of Evidence 408.

The Court finds that the Texas State Privilege should not apply in this federal case. As both parties highlight, the Supreme Court has established a two-factor balancing test to determine whether to apply a state law privilege. "[F]ederal law will recognize a privilege that promotes sufficiently important interests to outweigh the need for probative evidence. To

that end, the asserted privilege: (1) must be 'rooted in imperative need for confidence and trust,' and (2) 'must also serve public ends.'" *Sevilla v. U.S.*, 852 F. Supp. 2d 1057, 1059 (N.D. Ill. 2012) (quoting *Jaffe v. Redmond*, 518 U.S. 1 (1996)). Although the Court agrees that this information undoubtedly serves "public ends," such data is not imperatively in need of "confidence and trust."

Under Rule 26(b)(3)(A), fact work product may be discoverable if "(i) [it is] otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." The Court finds that Par has substantial need of these documents; they contain data reflecting utilization and other information about the three drugs that are at the heart of this litigation, and Par cannot obtain sufficiently similar data without undue hardship. Although Texas suggests that Par can serve its own subpoenas and readily utilize the information that is publicly available, the Court finds that argument unpersuasive. Indeed, if that were true, Texas would have done likewise. Instead, Texas utilized the authority of NAMFCU to request data forma all 50 states, and then compiled a 50-state analysis regarding the specific drugs in controversy. The Court finds that the data Ms. McCoy received from her data request,

and the compilations and summaries of the data created by Ms. McCoy, are not opinion work product. Both parties agree that the documents at issue consist primarily of collecting the results of a 50-state data request. To the extent that damage calculations, opinions, settlement figures, or anything other than pure input data is included, it may be redacted.

## Conclusion

For the reasons set forth above, Par's motions to compel [#240 and #245] are granted in part and denied in part, as detailed above, and the motion for a protective order [#259] is denied.

DATE: January 21, 2014        ENTERED:

_____
ARLANDER KEYS
United States Magistrate Judge